In the Matter of the Inventory of the Estate of Andrew J. Butler, deceased, to be returned by Benjamin F. Butler, Executor.

Inventory of assets by executors. Construction of statutes. The executor of a deceased resident of this State, to whom letters testamentary here have been issued, can be required to include, in his inventory, assets belonging to the deceased which are situated in another State. The executor is, by statute, required to make an inventory of all the goods, chattels and credits of the testator, without qualification or omission; which inventory must include every species of personal property belonging to the testator. The only qualification by statute is, that the property should have belonged to the testator at the time of his decease, and that the same should have come to the hands or knowledge of the executor.

Letters testamentary were granted by the surrogate of the county of New York, on the 14th day of November, 1864, to the appellant, executor of the last will, etc., of Andrew J. Butler, deceased.

On the 22d of August, 1865, the executor filed an inventory of the goods, chattels, and credits of the deceased.

On the 23d of August, 1865, the surrogate made an order, which, after reciting the filing of said inventory, continued as follows: "It appearing, that there are other assets belonging to said estate, situate in the States of Massachusetts,

Louisiana and California, it is ordered, that said executor return a further inventory of said estate, which shall include the assets so as aforesaid, situate in said other States," etc.

From that order of the surrogate, the executor appealed to the General Term of the Supreme Court of the first judicial district, which affirmed the said order.

This appeal is from the order of the General Term.

*John E. Devlin*, for the appellant.

*Wm. B. Aitken*, for the respondent.

HUNT, Ch. J.    The case presents but a single question,— Can an executor of a deceased resident of this State, to whom letters testamentary have been here issued, be required to include in his inventory assets belonging to the deceased which are situate in another State ?    The return shows that "claims and credits against persons resident in other States," and " other personal property situated in other States," form a portion of the property of the estate.    From the order of the surrogate that these assets should be included in his inventory, the executor brings an appeal.    The appellant's argument goes to this extent, that if the deceased left ten thousand dollars in bank bills in the State of Massachusetts, or the same amount in coin in California, which is now subject to the executor's order, or which may have been actually delivered to him, that the executor is not bound to notice it in his inventory returned to the surrogate of New York.

In my opinion, this view of the executor's duty is not correct.    The Revised Statutes provide, that with the aid of appraisers to be appointed, the executor " shall make a true and perfect inventory *of all* the goods, chattels and credits of such testator, and where the same shall be in different and distant places, two or more such inventories, as may be necessary."    (2 R. S., 82, § 2.)    The sixth section describes the property which shall be deemed assets, and which shall be included in the inventory, among which are the following : " 8. Debts secured by mortgages, bonds, notes or bills,

accounts, money or bank bills, or other circulating medium, things in action, and stock in any company, whether incorporated or not. 9. Goods, wares, merchandise, utensils, furniture, cattle, provisions, and every other species of personal property and effects not hereinafter excepted." By section eleven it is enacted that, " The inventory shall contain a particular statement of all bonds, mortgages, notes and other securities for the payment of money belonging to the deceased, which was known to such executor or administrator, specifying the name of the debtor in each security, the date, the sum orginally payable, the endowment therein, etc. ;" and by section twelve, " The inventory shall also contain an account of all monies, whether in specie or bank bills, or other circulating medium, belonging to the deceased, which shall have come to the hands of the executor, and if none shall have come to his hands, the fact shall be so stated in such inventory." Upon returning this inventory to the surrogate, the executor is required to make oath that such inventory contains a true statement of all the personal property of the deceased which has come to the knowledge of such executor, and particularly of all money, bank bills, etc., (§ 16.)

The executor is thus required to make an inventory of all the goods, chattels and credits of the testator, and no suggestion is to be found that those goods or credits not within the territory of this State, are excepted. All the goods and all the credits of the testator, without qualification or omission, are to be embraced in the inventory. It is further provided with particularity, that every debt secured by mortgage, note or bill, and every account, and all money and all bank bills, shall be retained, and then, in general language, that all goods, wares and merchandise, and every other species of personal property. This language is used with the apparent intention of embracing any thing that might possibly have been omitted in the particular enumeration. The only qualification of the statute is, that the property should have belonged to the deceased and that it should have come to the hands or to the knowledge of the executor;

the executor is therefore required to make oath, that the inventory contains a true statement of all the personal property of the deceased which has come to his knowledge, and particularly of all monies and bank bills. Upon the case before us this oath could not be truly taken by the executor, as there would be other property not thus included, to wit, in California and Massachusetts, and his inventory is not, therefore, a satisfaction of the requirements of the statute. Upon general principles the result would be the same. Upon the death of a testator his personal property rests in his executor immediately, and the whole of it. Before he can act, the will must be proved and the executor must qualify. It is, however, the will itself, and not its probate or his qualification, that transfers the title. (*Schutlz* v. *Pulver*, 11 Wend. 362.)

This is the rule as to personal property, whatever be its amount or wherever it be situated, with certain qualifications as to the rights of local creditors not necessary to be here considered. Upon the death of A. J. Butler, he having previously made a valid will appointing Gen. Butler his executor, the latter became at once invested with the title to all the personal property belonging to the former at his death, whether it was situate in Massachusetts, where he had formerly lived, in Louisiana, where he had more recently resided, or in New York, where he died. While the executor might not have been permitted officially to sue in the courts of another State which had not given him letters of administration, yet he could lawfully receive all personal property there situated, would be liable as for neglect of duty if he did not use due diligence to collect debts there due to the testator, and could transfer a title which would authorize his assignee to recover by action any personal property situate in either of those States. (*Schultz* v. *Pulver*, *supra* ; *Paterson* v. *Chemical Bank*, 32 N. Y. 21 ; *Parsons* v. *Lyman*, 20 N. Y. 103.) Personal property has no status or locality, except as it follows the owner's person. As to its transmission *inter vivos*, or by testamentary authority, it follows the law appertaining to the person of its owner. (*Supra* and

*Black* v. *Zachay*, 3 How. N. S. 514.)    The executor is the proper person to collect and receive all the testator's property, wherever situate, and to distribute it according to the laws of this State, subject to any specific claims that there may be upon it, in the State where it is actually found.    (Authorities *supra.*)

The appellant objects to this construction, upon the argument, that the statute requires the appraisers to appraise the personal property "which shall be exhibited to them" by the executor; that the assets in question are situate in a foreign State, and cannot be here exhibited, while the appraisers are local officers, without power to travel into or to perform duties in a foreign State.    This is an acute criticism upon the language of the statute, which, if other parts of the statute did not qualify it, would hardly prevail.    The idea of the statute, no doubt, is, that, generally, the property referred to could and would be exhibited to the appraisers for their personal examination.    This is not, however, made a condition of the exercise of their power; nor is there an intimation, that, unless actually produced, they may not appraise the property.    On the contrary, by sections one and two, which authorize their appointment, the power to estimate and appraise is general ; thus, the surrogate shall " appoint two disinterested officers, as often as occasion may require, to estimate and appraise the property of a deceased person "; and again, the executor "with the aid of the appraisers so appointed by the surrogate, shall make a perfect inventory of all the goods, chattels and credits of such testator, and where the same shall be in different and distant places, two or more such inventories, as may be necessary."    It will be observed, that these sections contain no restriction or qualification to the effect that the property must be produced before the appraisers, but that they include all the personal estate of the deceased without reference either to its *situs* or its condition.

While it is quite likely that the statute assumed that the property would generally be exhibited to the appraisers, yet a criticism as sharp as that which induced the objection

under consideration, would show that this could not in many instances be done as to be perfectly described in the statute, although situate in this State. Thus among the subjects declared to be assets to be inventoried are the following: " 3. The interest on lands devised to an executor for a term of years for the payment of debts." How can this interest be physically exhibited to the appraisers ? The land may be shown out of which the interest arises, and the will devising the estate may be produced. These are, however, the evidences simply of an interest, and not the interest itself, which in its nature is impalpable and unproducible. The seventh item of the assets is stated to be, " 7. Rent reserved to the deceased, which had accrued at the time of his death." How can rent accrued be exhibited to the appraisers ? You may show the instrument by which it was created, and the land out of which it issues, but neither of these is the rent itself. So of a " debt " or an " account " not secured by note or evidenced by writing, while evidence or proof of the claim may readily be produced ; it is difficult to see how the thing itself can be exhibited to the appraisers. It would be quite absurd, however, for an executor, upon this argument, to insist that these subjects need not be included in his inventory. In relation to these suggestions, as well as to the argument, that they should not be included because situated in a foreign State, and therefore not producible, it is enough to say that it is based upon an hypercritical construction of the statute.

The same answer is to be given to the objection founded on the provision of the statute that five days' notice of the appointment shall be given to the legatees and next of kin residing in the county where such property shall be. The statute is based upon the expectation that the property is situated in this State generally, and that the appraisal will be made upon a production of the property. I have endeavored to show, that such production or the presence of the property is not indispensable, and where not actually situate in any county of the State, the provision in question would not be applicable. Where no special provision existed,

the mode of proceeding would be under the direction of the surrogate, whose duty it would be to see that all proper notices were given, and that the rights of all parties were properly protected.

I do not well see how this appeal was originated, or what power the surrogate possesses to bring an appeal as an individual, where the parties interested do not move in the matter. All action in such cases may safely be left to those interested in the estate. Their pecuniary interest will dictate the necessary proceedings. In this case, however, this objection is expressly waived, the counsel of each party on the argument expressing the desire that no such consideration should be allowed to prevail, but that the question should be decided on its merits.

The order of the surrogate and of the General Term should be affirmed with costs.

Judgment affirmed.