Clement J. Despard et al., Executors, etc., Respondents, *v.* Mary F. Churchill et al.; Appellants.

A leasehold estate for years in lands situate in this State owned by a resident of another State will be considered as personal property, and as such, as to its transmission by last will and testament, controlled by the law which governed the person of its owner,

Whether the courts of this State will decree distribution of the assets collected in it under auxiliary letters testamentary granted by them, or will remit the disposition thereof to the courts of the testator's domicil, is not a question of jurisdiction but of judicial discretion under the circumstances of the particular case. Nor is this discretion controlled by the fact that citizens of this State as well as those of the State of the testator's domicil are appointed executors, and that those here are charged with the care and administration of the property in this State.

While it is no part of the policy of this State to interdict perpetuities or accumulations in another State, and while courts will not declare void a bequest valid by the laws of the State governing the disposition of the property, they will not give direct aid to sustain, enforce or administer here a devise or bequest made by a citizen of another State, which is in contravention with our statute law in relation to such perpetuities and accumulations.

Where, therefore, a resident of California died seized of certain leasehold estates for years in lands situate in this State, and leaving a last will and testament, void, in its material provisions, under the statute of this State, but valid by the laws of California; and where a portion of the executors named in the will were residents of this State, and these were charged with the care and administration of the property in this State, *held*, that the leasehold estates were to be treated as personalty, and to be governed by the law of the testator's domicil; but that the courts of this State would not aid in carrying out here bequests contrary to its statute law, and so ordered that the assets here, after paying therefrom certain legacies, valid under the laws of this State and directed to be paid by the executors here, be remitted to California to be there distributed.

(Argued February 18, 1873; decided September 23, 1873.)

Appeal from order of the General Term of the Supreme Court in the first judicial department, reversing a judgment entered upon the decision of the court at Special Term and granting a new trial.

This action was brought to obtain a construction of the last

will and testament of Robert H. Pearson, late of San Francisco, California, deceased.

The will, after giving various legacies to inhabitants of California and of the eastern States, contained the following provisions:

"Item 27.—I hereby nominate and appoint C. J. Despard, Jonathan Edwards and Benjamin Lunt, all of the city of New York, my executors, to take charge of and manage all the estate which I may die possessed of in the States of New York, Missouri, or other of the Atlantic States, and will hereinafter designate them as "my New York executors.

"Item 28.—I hereby nominate and appoint Henry F. Williams, Daniel S. Roberts and George E. Rogers, all of the city of San Francisco, my executors, to take charge of and manage all the estate which I may die possessed of in the States of California, Nevada or other of the Pacific States.

"Item 29.—The rest and residue of my estate, real, personal and mixed, I direct my executors to keep, preserve and manage, and to keep invested in real estate or good bonds, during the lives of my two sisters, and until the youngest of their children attains the age of twenty-one years; and in the meantime, out of the income of my estate, to pay to my sister, Mary F. Churchill, the sum of $4,000 in currency, annually, during the term of her natural life, and in such payments as may best suit the convenience of the estate; and also to pay to my sister, Nancy Dale, the sum of $1,000 in currency, annually, during the term of her natural life, and in such payments as may best suit the convenience of the estate; also to pay to my aunt, Hannah Shaw, of Portland, Maine, the sum of $700 in currency, annually, during the term of her natural life, payable quarterly or semi-annually, as she may need; also to pay to my aunt, Lois McLaughlin, of Portland, Maine, $700 annually, during the term of her natural life, provided she lives with her sister, Mrs. Hannah Shaw, paying her a reasonable compensation; and in the event of the death of either of my aunts, then to pay to the survi-

vor $1,000 in currency, annually, during her natural life, instead of the $700 before mentioned, and she is to be the head of that family; also upon the death of both my said aunts, to pay to Mary, daughter of my aunt Shaw, the sum of $500 annually, during the term of her natural life; and in the event that for any year or years the income of my estate shall prove insufficient to pay the several annuities herein provided, then I direct that all the said annuities shall be reduced proportionately, so as to be covered by the actual income for such deficit year or years only.

"Item 30.—In the event of the death of either or both of my sisters before the youngest child shall reach the age of twenty-one years, I direct my executors to make such provision for the support and education of their children as they may deem necessary and proper, out of the income of my estate.

"Item 31.—After the death of my two sisters, and upon the youngest of their children attaining the age of twenty-one years, then I direct my executors to divide and distribute among and between all the children of my said two sisters, share and share alike, per capita, *two-thirds* of the whole of my remaining estate, real, personal and mixed (intending hereby to include in the term "estate" all accumulations which have been made to it, if there should be any), excepting and providing that my nephew Robert, son of my sister Mary, shall have a double share, or twice as much as each of the other children, and in case that either of said children shall die before me, and shall leave issue, the share of such deceased child shall go to his or her issue.

"Item 32.—Upon the distribution of the two-thirds of my estate to my two sisters' children, as directed in item 31, or as soon thereafter as all the annuities herein provided shall cease and determine, I direct my executors to distribute the remaining third of my estate to my kindred next in degree after my sisters' children.

"Item 35.—The legacies and annuities herein provided, which are to be paid to persons living in the Atlantic States,

shall be paid by my New York executors; and in case of a deficiency of funds in their hands to make said payments, they shall draw for such deficiency upon my California executors, who are hereby directed to supply the same, and the receipt of one set of executors to the other shall always be deemed and taken as a sufficient voucher.   The legacies, bequests, expenditures and provisions which are hereby to be made to or for persons living in California or other Pacific States, shall be paid by my California executors.   The accounts of my New York executors shall be kept in currency or bankable funds; the accounts of my California executors shall be kept in gold coin.

"Item 36.—Each set of my executors shall have full power and authority to sell any of my property, either real or personal, within their respective control and management, whenever, in their judgment, respectively, it shall be considered advantageous to my estate, and they shall not be required to apply to any court for that purpose, but their respective deed or deeds of conveyance shall be sufficient to transmit the title, and they may sell for cash or on credit, or both, and the moneys arising from said sales, as well as what may arise from any surplus of income, they are authorized to invest in productive real estate or good bonds."

The testator died in San Francisco, July 10, 1868, seized of a large amount of property, real and personal, in California and other Western States, and also of two leasehold estates for years, in premises situate in New York city, one having about five, the other about four years to run.   On the 18th July, 1868, letters testamentary on will were granted by the Probate Court of San Francisco to the defendants, Williams, Roberts and Rogers, the executors named in the will, to take charge of and manage the estate in the Pacific States, who have qualified and entered on the discharge of their duties as such executors.   On 20th November, 1868, letters testamentary on will were granted by the surrogate of New York to the plaintiffs, as executors named in will, to take charge of and manage the estate of the testator in the Atlantic

States, who qualified as such executors, and entered upon their said office. Benjamin Lent declined to qualify as executor. Defendants, Mary F. Churchill and Martha Goodwin, were the only next of kin and heirs-at-law of the testator. Further facts appear in the opinion. The judgment at Special Term was in substance: That the leasehold property belonging to the deceased at the time of his death, in the State of New York, with the rents and income thereof since the death of the testator, vest in the plaintiffs, as executors of said will, as assets to be administered in due course of law for the payment of debts, and distribution between Mary F. Churchill and Martha Goodwin, as in cases of intestacy under the law of the State of New York, and that the executors must account for the rents and income received since the death of the testator, which, after paying the expenses of the administration, must be equally divided betweeen the said Mary F. Churchill and the said Martha Goodwin. That all the annuities bequeathed in said will are valid, and commenced at the death of the testator, and are payable out of the income of the estate, which began to accrue at that time (other than said leaseholds in New York), and such annuities are payable annually, as directed by said will. That the annuities bequeathed in said will are payable by the executors, as therein directed, and in the absence of funds in the hands of the plaintiffs, as executors, to pay the annuities which the will directs them to pay, they are authorized to draw on Henry F. Williams, Daniel S. Roberts and George S. Roberts, as executors, from time to time, for the requisite amounts to meet the payment of such annuities, and the same are properly payable out of the estate in California. That although the trust to the executors of the New York property was void as above stated, none of the annuities were to fail on that account, but the estate in California is liable for the payment of the same; and it is the duty of the California executors to provide and pay over to the New York executors the funds necessary therefor, in case there is a

lack of funds for this purpose in the hands of the last named executors.

*E. Sprout* for the appellants. So much of the will as vests the executors with a trust estate as to the residue of the estate is void. (3 R. S., 5th ed., 11, §§ 14, 15; *Bradley* v. *Amidon*, 10 Paige, 235; *Brewster* v. *Striker*, 2 N. Y., 31; *Leggett* v. *Perkins*, id., 305.) The property in New York is leasehold, and is to be treated, as far as the statute against perpetuities is concerned, as realty. (1 Edm. Stat., 670, § 1; 671, § 5; 673 § 23; 2 id., 371, § 3; 3 R. S., 5th ed., 10, § 1; *Averill* v. *Taylor*, 8 N. Y., 52; *Trustees, etc.*, v. *Dunn*, 22 Barb., 402; *Warren* v. *Leland*, 2 id., 619; *White* v. *Howard*, 52 id., 306; *Hosford* v. *Nichols*, 1 Paige, 226; *Chapman* v. *Robinson*, 6 id., 27; *Putnam* v. *Westcott*, 19 Wend., 73; Story on Confl., §§ 431, 447, 472.) The suspension of the power of alienation of chattels, real as well as realty, is forbidden by the statute of this State. (3 R. S., 5th ed., 11, § 15; 12, § 23; 75, § 1; *Amory* v. *Lord*, 9 N. Y., 403; *Harris* v. *Clark*, 7 id., 243; *Costar* v. *Lorillard*, 14 Wend., 265; *Hawley* v. *Lorillard*, 16 id., 61; *Howe* v. *Van Schaick*, 20 id., 564; [S. C.], 5 Paige, 394, 403; 7 id., 221.) The validity of the testamentary disposition of the leasehold estates must therefore be determined by the law of New York. (*Hosford* v. *Nichols*, 1 Paige, 226; *Chapman* v. *Robinson*, 6 id., 627; *White* v. *Howard*, 52 Barb., 306; Redf. on Wills, 398; Willard's R. E., 471; *Mills* v. *Fogel*, 4 Edw. Ch., 559; 7 Cranch, 115; 10 Wheat., 192; 20 J. R., 229.) The devise in trust to the executors is in contravention of the statute and is void. (1 Edm. Stat., 672, § 14; *Hawley* v. *James*, 16 Wend., 62; *Taylor* v. *Gould*, 10 Barb., 388–398; *Harris* v. *Clark*, 7 N. Y., 242, 548; *Amory* v. *Lord*, 9 id., 403; *Schettler* v. *Smith*, 41 id., 334; 16 Wend., 62; *Phelps* v. *Phelps*, 28 Barb., 121; *Patterson* v. *Ellis*, 11 Wend., 260; *Everett* v. *Everett*, 29 N. Y.; *Vanvechten* v. *Vanvechten*, 8 Paige, 127.) The trust as to personal property is in contravention of the statute of this State and is void.

(2 R. S., chap. 4, tit., 4, § 1; Story's Confl. Laws, §§ 22–28, 36–38, 472, 472 *a; Chamberlain* v. *Chamberlain,* 43 N. Y., 433; *Mornhorner* v. *Hove,* 9; S. & M., 247; *Zipsey* v. *Thompson,* 1 Gray, 243; *Bk. of Augusta* v. *Earle,* 13 Peters, 519; Westlake, P. I. L., § 332; *Lemmon* v. *People,* 20 N. Y., 562.) The law of the domicile cannot be invoked in the case at bar, as its application would be opposed to public policy. (3 R. S., 5th ed., 12, § 23; Story Confl. Laws, 472 *a*.)

*Ashbel Green* for the respondents. The property in New York was leasehold and is to be treated as personalty. (*Westervelt* v. *People,* 20 Wend., 422; 1 Wash. on R. P., 3d ed., 29, 310, 313; 1 R. S., 722, 723; 1 Edm. Stat. at L., 670, 671; 1 R. S., 755; 7 Edms., 706; 2 R. S., 83; 2 Edms., 84; *Pugsley* v. *Aiken,* 11 N. Y., 498; *Parsons* v. *Lyman,* 20 id., 103.) The mode of disposition is governed by the law of the domicile. (*Moultrie* v. *Hunt,* 23 N. Y., 407; *Chamberlain* v. *Chamberlain,* 43 id., 433; *Knox* v. *Jones,* 47 id., 395.) By the law of California the devise is good. (Wood's Cal. Dig., 168; 4 Kent's Com., 271; *Bryan* v. *Knickerbacker,* 1 Barb. Ch., 425.)

FOLGER, J. The testator had his domicile in the State of California. He made his will there. No question is made but that it is in all of its provisions valid by the law of that State. It, however, by its terms, disposes of certain property in this State, and by provisions which are invalid here, inasmuch as they run counter to our statute law. (1 R. S., 723, § 15; id., 773, § 1.) The statute law here referred to embodies the policy of this State in relation to perpetuities and accumulations. As this sovereignty will not uphold a devise or a bequest by one of its citizens in contravention of that policy, it will not give its direct aid to sustain, enforce or administer here such a devise or bequest made by a citizen of another sovereignty. (See *Chamberlain* v. *Chamberlain,* 43 N. Y., 424.) Yet it is no part of the policy of this State to interdict perpetuities or accumulations in another State. (Id., 434.)

The property in this State affected by this will is leasehold estates, held by leases for a short term of years. This is, at common law, personal property. (3 Kent, * 401; 2 id., 342; *Merry* v. *Hallet*, 2 Cow., 497; *Brewster* v. *Hill*, 1 N. Y., 350.) The statutes of this State have, for some purposes, modified its character. Estates for years are denominated estates in lands. (1 R. S., 722, § 1; id., 750, § 10; id., 762, § 33.) They are still chattels real (id., 722, § 5), and are not classed as real estate in the chapter of " title to property by descent.". (Id., 754, § 27.) A judgment binds and is a charge upon them (2 id., 359, § 4), yet they go to the personal representatives as assets for distribution. (Id., 82, § 6; and see *Pugsley* v. *Aikin*, 11 N. Y., 498.) They vest in the executors as a part of the testator's personal estate. These leasehold estates must, for the purposes of this case, be treated as personal property.

Personal property is subject to the law which governs the person of its owner as to its transmission by last will and testament; and this principle, though arising in the exercise of international comity, has become obligatory as a rule of decision by the courts. (*Parsons* v. *Lyman*, 20 N. Y., 103.) And, as a general rule, the distribution of personal property, wherever made, must be according to the law of the place of the testator's domicile. (*Harvey* v. *Richards*, 1 Mason, 381–407.)

The cases are not uncommon in which a testamentary disposition made in a foreign jurisdiction has controlled the transmission of personal property in this. Usually the administration of the estate has been committed by the will to citizens of that jurisdiction. They have acquired the possession and control of the property through voluntary payment or surrender, or, by making probate of the will here, have obtained auxiliary letters testamentary, and under these have enforced collection or surrender. In such case, those charged with the administration are liable to account here for the assets collected by the authority granted here. It seems to have been generally held, that where there are domestic

creditors of the estate, payment of the debts may be decreed out of the assets. (*Dawes* v. *Boylston*, 9 Mass., 337; *Richards* v. *Dutch*, 8 id., 506; *Harvey* v. *Richards, supra.*) For other purposes, such as the payment of legacies and the distribution of the surplus to the next of kin, the courts in Massachusetts have held that the assets must be remitted to the place of the domicile. (See cases above cited.) But this has been questioned with great force and reason. (See *Harvey* v. *Richards, supra.*) And the better rule is, that whether the courts of one State are to decree distribution of the assets collected in it under auxiliary letters granted by them, or to remit the disposition thereof to the courts of the testator's domicile, is not a question of jurisdiction, but of judicial discretion under the circumstances of the particular case. (*Harvey* v. *Richards, supra; Parsons* v. *Lyman, supra.*) Nor does the fact that, by the will in this case, the testator appointed citizens of this State as executors, as well as citizens of the State of his domicile, and charged those here with the care and administration of the property here, alter the rule. In *Mason* v. *Richards*, above cited, the defendant was appointed, in this country, administrator, with the will annexed of a testator domiciled in the East Indies, where the executors resided.

The question then arises, under the particular circumstances of this case, whether the assets in this State should not be remitted to the executors in the State of California to be administered, as they may be, in accordance with the directions of the will, under the laws of that State.

As has been stated, the courts of this State may not directly aid in carrying out here, a bequest which is in violation of its statute law, and contrary to a policy of which it is tenacious. And yet they may not hold the bequest void, when it is valid by the law of the State, by which the disposition of the property is to be governed. The one would be to transgress the written law of this State; the other would be to disregard an unwritten rule of law, well settled, and of extensive and frequent application.

There are certain legacies appointed by the will which are valid under our law; they are to persons residing in the Atlantic States. The will directs the executors here to use from the assets here to pay those legacies. There is no obstacle of law, economy or convenience in the way of this provision of the will being carried out to its letter. The residue of the assets should be remitted to the executors in California to be administered there. This residue will be much less in amount than the assets there. They are leasehold estates of terms not long, and will soon cease (if they have not already) to be continuously available for any purpose of the will. There are no creditors of the estate in this State to be protected. The legatees here are protected by the payment of the legacies to them from the assets. The next of kin of the testator, are also the annuitants under the provision of the will, which is void by our law. As annuitants, they must soon rely mainly upon the fund, the executors and the courts, in California. If to them as next of kin were adjudged here a distribution of the property here, it might not prevent them from claiming there as annuitants. Thus by conflict of laws and adjudications, there would be a measurable thwarting of the testamentary intention, and the giving to them of more than the testator designed. It seems, then, that the rule of law above mentioned and the circumstances of the case indicate that the judgment of the Special Term directing a distribution of the assets in this State among the next of kin was not well advised, and that the judgment of the General Term reversing that of the Special Term in that respect was proper.

Certain other questions are raised by the complaint and passed upon by the Special Term, but not noticed by the General Term; and perhaps it was not needed that they should be. Having concluded that the assets here should be remitted to the State of California to be distributed in accordance with the law there, the solution of those questions for the practical guidance of those interested, is of necessity to be left to the courts of that State.

The order of the General.Term should be affirmed and final judgment for respondents in pursuance of stipulation.

All concur, except ANDREWS, J., not voting.

Order affirmed, and judgment accordingly.