CHARLES A. W. SHERMAN, TRUSTEE OF CHARLOTTE SHER-
MAN AND OTHERS, CHARLOTTE SHERMAN AND OTHERS,
APPELLANTS, *v.* HENRY N. PAGE, AS EXECUTOR, &C., OF
SARAH E. LITTLE, DECEASED, RESPONDENT.

*Will—a testator may appoint one executor to take charge of property within, and
another of property without the State—such an executor is only bound to account
for such property as is within the State in which he is appointed.*

One Sarah E. Little, a resident of Perry, Wyoming county, New York, died,
leaving a last will and testament, which was duly admitted to probate by
the surrogate of that county, by whom, on January 6, 1873, letters testa-
mentary thereon were duly issued to one ·Page, one of the executors
named therein. At the time of her death the testatrix owned certain per-
sonal property, situated within this State, and also certain bonds and
mortgages and promissory notes, in the State of Michigan, the property in
that State being held and managed for her by one Grant.

The testatrix gave certain legacies to persons named in the will, and then ap-
pointed ·"Henry N. Page my executor, for carrying out the provisions of
this, my last will and testament, so far as they relate to parties and property
in this State (in New York), and Charles N. Grant, of East Saginaw, and ·
D. H. Jerome, of Saginaw City, Michigan, my executors for everything, so
far as they relate to parties and property in the State of Michigan, and
elsewhere."

Page never applied for letters testamentary or of administration in Michi-
gan, but letters were duly issued out of the probate court of that State to
the said Grant and Jerome, who qualified and acted as executors under the
said will.

*Held*, that the title to the property of the testatrix, which was situated out-
side of this State, did not vest in Page, but only the title to such as was
within the State.

That he was not chargeable with or liable to account for property of the
testatrix situated without this State, and which never came into his
actual possession, nor was he bound to enter such property upon the in-
ventory filed by him here.

That upon accounting for all the property of the testatrix, situated within
this State, at the time of her death, he was entitled to be discharged.

APPEAL from a decree made by the surrogate of Wyoming
county, upon the final accounting of one Page, as executor of the
last will and testament of Sarah E. Little, deceased, which will had
been duly admitted to probate by the said surrogate. At the time
of her death she resided in Perry, Wyoming county, New York.
On January 6. 1873, letters testamentary were issued. to Page, as

sole executor. After the expiration of eighteen months he petitioned for citations, and for a final accounting, he stating in his petition that all the creditors of the deceased had been paid, according to the best of his knowledge and belief. He presented an account, in which he charged himself with the amount of the inventory, viz., $1,673.68, and one dollar increase thereon, or in gross, " *Total inventory* and gains, $1,674.68." His accounts showed payments for expenses and commissions in administering the estate, for funeral expenses, for a monument and lot, and for debts paid, and distribution made to legatees by him, amounting in all to $1,487.31, leaving a balance in his hands of $187.37.

His affidavit was in the usual form, to the effect that it contained " a full and true account of *his receipts* and disbursements on account of the estate of the deceased, which have come to his hands as such executor, or which have been received by any other person by his order or authority for his use . . . that the moneys stated in said account, as collected, were all that were collectable, according to the best of his knowledge and belief," &c.

Charles A. N. Sherman, as trustee, and Charlotte Sherman, Maria Cameron, James L. Sherman and Sarah E. Morse, as legatees, filed objections to the account. It was admitted that " the testatrix, at the time of her death and previous thereto, was the owner of and possessed of a large amount of property, consisting of promissory notes, bonds and mortgages, and real estate of over $37,000, of which the personal property, viz., bonds, mortgages, promissory notes, and other evidences of debt and choses in action, was, and had been in the charge of C. N. Grant, of East Saginaw, in the State of Michigan, as her agent, for the purpose of investment and re-investment."

The will was admitted to probate January 6, 1873, by the surrogate of Wyoming, and Page alone qualified as executor, in this State, and letters to him only were here issued.

On the 17th of February, 1873, the will was admitted to probate in the Probate Court of Saginaw county, Michigan, on an exemplified copy of the said will and its probate in this State. The Probate Court of Saginaw county, Michigan, granted letters of administration March 24, 1873, to C. N. Grant and D. N. Jerome,

they having given bonds and duly qualified, and it was admitted that they have accepted the "said trust, and have ever since continued to act thereunder, and at once took possession of all said personal property situate in the State of Michigan, and have ever since continued to hold possession and claimed control of said property, and have declined to surrender the same, or any part thereof, to said Henry N. Page, and that said personal property still remains in the State of Michigan, and no part of it has come to the hands of said Henry N. Page."

It was further admitted "that said Henry N. Page has never taken letters testamentary under said will, in the State of Michigan; that *no* part of said personal property has ever been out of the State of Michigan," and "that said Henry N. Page, as executor of said will, has never commenced any legal proceedings to recover said personal property from said Charles N. Grant or D. H. Jerome, as executors in Michigan, or as individuals, or to compel them, or either of them, to render an account of their proceedings as such executors, or pay over to him, said Page, as executor aforesaid, the moneys necessary to pay the said legatees, Charlotte Sherman, Maria Cameron, Sarah E. Morse and James Sherman," &c.

It was also admitted "that all the property and assets of every kind, name and nature, which were actually in the hands of said Page at the time of the death of Sarah E. Little, or which have since actually come into his hands, as such executor, or under his control, either directly or indirectly, were included in his inventory on file in the office of the surrogate of Wyoming county, New York, and were all that were actually in the said State, and that he has never surrendered or given up any assets belonging to said estate, to any person whatever, except as set forth in his account," and also "that there was sufficient of said promissory notes, bonds and mortgages, and other evidences of debt, in the hands of said Grant, or Grant and Jerome, as such executors, to pay all testatrix's debts in the State of Michigan, and all legacies to legatees in the State of New York, and to Maria Cameron; . . . that the testatrix knew her said notes, bonds and mortgages, and other assets, except what are accounted for by said executor, Page, were then in

the hands of C. N. Grant, aforesaid, as her agent." It was admitted that Grant and Jerome " had two years from the 17th of February, 1873, in which they could not be required to account and pay over moneys of said estate to any person legally entitled thereto."

On the second day of June, 1879, the decree was made by the surrogate of Wyoming county, stating the accounts of Page, showing a balance of $254.23 in his hands, and finally settling and adjusting his account; allowing him as fees $66.86, and ordering the balance to be invested for keeping in repair the cemetery lot in the cemetery, in the village of Perry, and the monument erected thereon.

The testatrix's will bears date 30th August, 1872, and contained many bequests and legacies. The fourth and fifth clauses thereof are as follows, viz.: " I give and bequeath to Charlotte Sherman the interest of four thousand dollars, during the term of her natural life. At her decease the said sum of four thousand dollars shall be equally divided between Maria Cameron, Sarah E. Morse, and James Sherman, children of C. A. N. Sherman, or so many of them as shall then be living."

*Fifth.*—" I give and bequeath to Maria Cameron and to Sarah E. Morse, each the sum of one thousand dollars."

The clause appointing her executors was as follows:

" *Twenty-sixth.*—I hereby appoint Henry N. Page my executor, for carrying out the provisions of this, my last will and testament, so far as they relate to parties and property in this State [in New York], and Charles N. Grant, of East Saginaw, and D. H. Jerome, of Saginaw City, Michigan, my executor for everything, so far as they relate to parties and property in the State of Michigan and elsewhere; and my executors are hereby authorized and empowered to sell and convey any real estate of which I may be possessed, as they shall deem for the best interest of the legatees."

It appeared that Maria Cameron, a legatee named in the will, resides in the State of Tennessee; that the legatees Charlotte Sherman, Sarah E. Morse and James Sherman resided, at the time the will was made, and ever since have resided, in this State, and that such facts were known to the testatrix.

*E. M. Morse* and *H. L. Comstock,* for the appellants.

*L. A. Hayward,* for the respondent.

HARDIN, J.:

I think it must be held that the executor, Page, derives title to the property of the deceased, so far as he had any, in virtue of the will of the testatrix, and that he took just such title and no more than the terms of the will carry to him. (*Hartnett* v. *Wandell,* 60 N. Y., 346, and cases there cited in opinion of ALLEN, J.)

The testatrix appoints him executor for carrying out the provisions " of her will, so far as they relate to parties and property in this State." Here we have the exact words, which are the sole foundation of his title to the property of the deceased. They contain the limit of his powers in respect to her property and the disposition of it.

Undoubtedly all personal property possessed by the testatrix in this State at the time of her death passed directly upon the happening of her death to the executor Page.

The circumstances surrounding the testatrix at the time of her execution of the will may be reverted to, to aid in the construction of any ambiguous or uncertain provisions. It appears that she was residing in Perry, Wyoming county, when she made her will; that she continued to reside there; that she had property in this State; that she had relatives and friends who were to receive from her bounty in this State. She likewise had a large property in Michigan, and friends and relatives there and elsewhere. And it must be presumed that she understood the well settled rule of law, that her property would pass by her will to the person or persons she named as her executors. With such knowledge, it is very easy to understand how she might deem it advisable to commit to the care of Page, a resident of this State, the personal property owned by her being in this State, and direct that " so far as the provisions of this my last will " relate to parties and property in this State he should be her executor.

We turn to the further language used by her in regard to the persons named as executors in the State of Michigan.

She says : " I appoint Charles N. Grant, of East Saginaw, and D. H. Jerome, of Saginaw City, Michigan, *my executors for everything*, so far as they relate to *parties* and property in the State of Michigan and elsewhere." Thus the title to the "*property* in the State of Michigan" seems to be conferred upon these two executors. The words " executors for everything, so far as they relate to parties and property," seem ample to vest title to the property belonging to the deceased in those executors thus named for the purposes of the trust.

These words, coupled with the words in respect to the executoi, Page, exclude all idea that she intended to appoint Page as executor to receive " title to the property in the State of Michigan belonging to her then, situated therein." It certainly was competent for her to name executors for different States and to define their powers and duties. (*Despard* v. *Churchill*, 53 N. Y., 192; *Harinett* v. *Wandell*, 60 N. Y., 350.)

The limited power or title to property conferred upon Page is made to appear more clearly by the very peculiar words of the appointment of the Michigan executors. She did not stop with giving them power or an appointment co-extensive with the State of Michigan as to parties and property therein, but she adds the words " and elsewhere." Following as they do in the same clause with the two provisions adverted to, it must be considered that they relate to parties and property elsewhere than in the States of Michigan *and* New York. The conclusion seems to follow, from what has already been said, that the executor, Page, performed the full duty cast upon him in respect to " the property," as such, of the deceased, when he converted into cash whatever was " in the State of New York " at the time of the death of the testatrix, and disbursed it according to the terms of the will.

Nor do I think he was, under the peculiar language of the will, called upon to file an inventory of the property of the deceased not within the State at the time of her death. Manifestly, a general executor of the whole estate, who is appointed in the State of the domicil of the deceased, must put upon the inventory all the property which comes to his knowledge, wherever situated. Such is the rule as laid down in *Matter of Butler* (38 N. Y., 397). In

that case the executor had duties to perform as to property situated in other States, and in the absence of any conflicting administration, it was held he would take the title to property situated beyond the State where he was appointed, and he would be authorized to receive pay upon notes and other choses in action, and give acquittances therefor. (*Parsons* v. *Lyman*, 20 N. Y., 103; *Petersen* v. *Chemical Bank*, 32 N. Y., 21.)

Nor has Page, the executor, been given any interest in or title to the assets in Michigan, which would entitle him to letters of administration with the will annexed in that State. So long as the executors Grant and Jerome chose to prove the will there, and take upon themselves its execution, they were presumptively exclusively entitled to administer there. (1 Williams on Executors, 351; 3 Swabey & Tristram, 423, 456.) Nor do the facts presented here warrant the conclusion that it was a neglect of duty on the part of Page to omit to go into the State of Michigan, and take legal proceedings to obtain possession of the proceeds of the property in that State.

I have attempted to show that he had no right to the property specifically, because it passed from the testatrix to Grant and Jerome as executors, and they were entitled to use it: first, to pay any debts of the testatrix; and secondly, it was their duty to apply it to the discharge and settlement of the legacies given in the will

If they fail to perform such duty, the courts of that State, it must be assumed, upon a proper application by the creditors, if any, or by the legatees or distributees, would give the proper directions, in compliance with the rules of law, equity and comity.

Doubtless the rule prevails in that State, which has been recognized over and over again in this State, to wit, a distribution according to the law of the place of the domicil, if distribution or payment be ordered. (*Parsons* v. *Lyman*, 20 N. Y., 103; *Harvey* v. *Richards*, 1 Mason, 381.) Or else cause the proceeds to be remitted to the executor of the domicil, according to a rule laid down in this State. It was said in *Despard* v. *Churchill* (53 N. Y., 192), that it is not a question of jurisdiction as to the proceeds, but of judicial *discretion* under the circumstances of the particular case.

It is insisted in behalf of the appellants that the case of *Schultz* v. *Pulver* (11 Wend., 361) is an authority favorable to them. In that case a majority of the court agreed to a judgment declaring the administrator liable for negligence in omitting to collect some $650 on a note against a party in Pennsylvania, as the debtor was entirely responsible, and the administrator in this State might, by obtaining letters of administration in that State, collect the note.

That case is wholly unlike the one before us, and cannot aid the appellants, if the views I have already expressed are correct. If the funds not needed in Michigan, to pay debts or legacies there, had been remitted to Page, the executor, it would doubtless have been his duty to pay them over to the *parties* entitled thereto, and we find nothing in the terms of the decree entered, absolving him from that duty.

But the learned counsel for the appellants seems to think that the statement of the accounts already had might change the course of the funds, or interfere with a proper disposition thereof. The will, as we have seen, is an unusual one in the respects we have considered it, and for greater caution it may be proper to insert in the decree a provision declaring " *that in case further assets or proceeds of assets* shall come to the hands *of Page as executor*, from the *hands of Grant and Jerome*, or from any other source, then the same be accounted for to the surrogate, and paid over according to the terms of the will."

The surrogate's decree will be so modified, and as so modified affirmed, with costs payable out of the estate.

TALCOTT, P. J., and SMITH, J., concurred.

Ordered accordingly.