## In re CARTER'S ESTATE.

### In re JACOB et al.

(Supreme Court, Appellate Division, Second Department.    May 8, 1896.)

1. EXECUTORS AND ADMINISTRATORS—REMOVAL—PETITIONING CREDITOR.
    On an application to revoke letters testamentary, it appeared that the petitioning creditor had obtained a judgment against the executors on a claim against testatrix, that testatrix, before her death, had brought an action for rent of a leasehold, and that the action was prosecuted to judgment by the executors after her death, but the judgment was not inventoried by the executors, though they charged the referee's fee against the estate. Afterwards one of the executors brought ejectment against the tenant of the leasehold, on the ground that she, and not testatrix, was the owner thereof, and the other executor did not suggest that the title of the leasehold was in testatrix, nor did he bring it to the attention of the court. Both executors refused to recognize any right under the petitioning creditor's judgment, and their attorney testified that he had benefited the estate by preventing the petitioning creditor from collecting an unjust claim. In resisting such claim the creditor incurred costs and expenses of more than $1,000. *Held*, that the executors were guilty of misconduct, for which they would be removed.

2. SAME—ASSETS—JUDGMENT.
    A judgment in favor of a decedent's estate is an asset, though an appeal therefor is pending, where it does not appear that any stay was granted pending the appeal, or that any obstacle stood in the way of the collection of the judgment.

Appeal from surrogate's court, Richmond county.

Judicial settlement of the accounts of William H. Jacob and Josephine F. Clason, as executors of the will of Elizabeth Carter, deceased. From a decree denying a motion by Charles R. Avery, executor of the will of George P. Avery, petitioning creditor, to revoke letters testamentary, said Avery appeals. Reversed.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

E. H. Benn, for appellant.
E. Luther Hamilton, for respondents.

HATCH, J.    George P. Avery recovered a judgment against the executors herein, after a trial, which was affirmed on appeal (15 N. Y. Supp. 564), and was finally entered for the sum of $4,638.44. The executors did not qualify and enter upon the duties of their trust until nearly five months after the death of their testator, when letters testamentary were issued to them. The inventory of the personal estate of the testator was not filed until nearly two years after her decease, and, as then filed, showed a personal estate appraised at $1,477.91. The executrix, Josephine F. Clason, is a niece of the testator, and by the terms of the will took a life estate in all of testator's property, real and personal. The executor, William H. Jacob, is the son of Emma Lawrence Jacob, who takes the remainder of the estate upon the termination of the life tenancy. No settlement of the accounts of the executors having been had, and noth-

ing being paid upon Avery's judgment, he presented to the surrogate a petition, on November 12, 1890, upon which a citation was issued, requiring the executors to show cause why settlement of their accounts should not be had. On November 26, 1890, the return day of the citation, the executors presented a petition to the surrogate, praying that their accounts might be settled. Thereupon the proceedings were consolidated, the executors filed their account, and Avery filed objections thereto. After the evidence taken upon these proceedings had been closed, Avery procured a citation to be issued, requiring the executors to show cause why their letters testamentary should not be revoked. Pending its disposition and that of the accounting, Avery died, and Charles R. Avery, his executor, was substituted as a party in his stead. Thereafter the surrogate entered a decree denying the motion to remove the executors, and subsequently a decree was entered, settling the accounts of the executors. An appeal from both decrees brings the matter before this court.

For a proper disposition of this appeal, we do not deem it necessary to consider any other questions than such as are presented by the fifteenth specification in the objections filed to the account. It appeared upon the hearing that Mrs. Carter was, at the time of her death, the owner of, or at least that she held in her name a certain lease of, premises, No. 42 Sheriff street, in the city of New York, for the term of 500 years; that some years prior to her death she had leased these premises to one John Baldwin, as tenant, for a term of 21 years, at an annual rental of $450. Baldwin subsequently assigned this lease to George W. Baldwin, and, the latter having died possessed of the premises, and indebted for rent under the lease, Mrs. Carter brought an action thereon against the executor of his estate to recover the amount due, which action was pending at her death, and was thereafter successfully prosecuted by the executors herein, and judgment entered for $2,866.44, damages and costs. This judgment was not inventoried or set out in the account of the executors in any form, although there is a charge against the estate of $366 for referee's fees paid by the executors in that action. After the objection was made which called attention to this omission, the executors filed a supplemental account, alleging that the omission was an oversight, and this was the excuse made when examined upon the proceeding. In the account filed the significant statement is made that the judgment is nominally one in favor of the executors, and nowhere is it asserted that the judgment constitutes an asset in favor of the estate for its amount, if collectible. The reason for this, and the real claim of the executors, will more clearly appear when we consider this claim in connection with the lease of Mrs. Carter, and the proceedings by which her estate has been divested of apparent title to it. Mrs. Carter's deed from the city of New York bore date October 28, 1861. A long time prior to this, the father of the executrix, Clason, owned the same premises, and the title passed from him at the sale by which Mrs. Carter obtained title. After Mrs. Carter's death, and after the judgment was recovered against the executor of Baldwin, the executrix, Clason,

commenced an action in ejectment against the tenant, Baldwin, to recover possession of the premises. In this proceeding the attorney for Clason testified:

"I didn't go back of the time when Mrs. Carter got her title, to the time when Mrs. Clason and her ancestors had title. In the case of Miss Clason against Baldwin I did. I made no reference in that case to the subsequent title of Mrs. Carter in the case."

In other words, when he sued Baldwin in Mrs. Carter's case for the rent, he relied upon Mrs. Carter's title. When he sued in ejectment for Miss Clason, he suppressed Mrs. Carter's title, and proved the title of Miss Clason's father, and then established her relation as heir. The executor Jacob was cognizant of the suit brought to recover the rent against Baldwin, and knew of Mrs. Carter's title, and made claim to the rents in her name. He also knew and was present at the trial when his co-executor was seeking by ejectment to defeat the title of the estate in the property. He evidently lent her aid to that end, for at no time did he suggest that Mrs. Carter had title, or seek to bring it to the court's attention, but either actively consented, or passively acquiesced, in the suppression of that title, in order that Miss Clason might succeed in the action. The effect of this transaction was to perpetrate a fraud upon the court (State of Michigan v. Phoenix Bank, 33 N. Y. 9–25; Galatian v. Erwin, 1 Hopk. Ch. 54); and, if Mrs. Carter had title to the premises under her lease, then such lease constituted an asset of her estate, and should have been inventoried as such (Trustees v. Dunn, 22 Barb. 402; Despard v. Churchill, 53 N. Y. 192), and the suppression of her title was a fraud upon her estate, and the creditors thereof; and it is quite evident, from the supplemental account filed, and the attitude of the executors in the action by which this estate was divested of title, that their claim is to be that the Baldwin judgment is not an asset of the estate, but is in fact the property of Miss Clason, for whom Mrs. Carter held as trustee. Such was the view taken by the learned surrogate. He seems to have held that, because an appeal was pending in the Baldwin action for rent, therefore it did not constitute an asset of the estate, and that, in any event, the evidence warranted the conclusion that Mrs. Carter simply held the lease as trustee for Miss Clason, and therefore the estate had no interest in the judgment or lease. We find ourselves unable to agree with either conclusion upon the case as presently developed. The judgment, as it stands, is the property of this estate,—an asset of the estate. It does not appear that there was any stay of proceedings pending the appeal, or that there exists any obstacle standing in the way of its collection. The pendency of an appeal does not change is character as an asset, or prevent its collection by any of the remedies known to the law; and, until some fact appears to relieve the executors of the duty to collect, they are chargeable with the consequences which flow from their inaction. We are not called upon now to determine whether Mrs. Carter's estate has or has not an interest in this lease. It is sufficient now to say that the evidence disclosed facts from which we can say that the estate may have title to this lease, and nothing which appears

in this record conclusively establishes that the estate has not such interest. Sufficient, however, does appear from which we are able to see that the creditor who brings this appeal is not likely to have any active assistance from these executors in realizing upon any property to which the estate might be entitled.

It is the claim of the creditor who has prosecuted this proceeding, and the evidence tends to establish the claim, that the estate is in fact solvent, and abundantly able to pay the judgment which he holds. It is quite evident that there is intense hostility upon the part of the executors against the claim, which has been secured after a bitter contest. Both executors refuse to recognize any right under it, except so far as they have been compelled thereto by its legal force. Their attorney also testified, without doubt to their satisfaction, that he has benefited the estate by "preventing Mr. Avery from collecting an unjust claim against the estate." The unjust claim here mentioned is a judgment of the supreme court, and the resistance of the claim has already increased its amount, in costs and expenses, upwards of $1,000. This attitude upon the part of the executors is in active hostility to the duties which devolve upon them, in the proper discharge of their trust. That duty requires that they shall actively preserve all of the property which belongs to the trust estate, and see that it is devoted to the purposes which the trust and the law require. It was the bounded duty of these executors to have called to the court's attention the lease of their testator, when title under it was attacked, and their failure to do so was a fraud upon the court, and upon the creditors of the estate. Among the duties solemnly imposed is to pay debts, and not resist claims when properly established. This judgment is an established claim of the highest character known to the law, and it does not comport with the duties of trustees to refuse recognition of it, make no attempt to pay it, and, by actions and other proceedings, make its collection impossible. One executor is the life tenant of this estate, and stands in irreconcilable hostility to any claim of propery in the estate of the lease held by Mrs. Carter at her death. The other is the son of the remainder-man, and is interested as her heir. The debts against the estate, aside from the Avery judgment, are small. The executors, therefore, are parties most deeply interested in the preservation of this estate to the beneficiaries under the will. Such position renders their relation to creditors most delicate, and calls for the exercise of the most scrupulous integrity in disposition of the property, that creditors may not suffer on account of self-interest. We have by no means exhausted this record of material to show that these executors have not acted for the best interests of this estate and its creditors, but that they have rather acted for the best interests of the beneficiaries under the will, and in active hostility to the creditor before us. This is sufficient to call for their removal (Haight v. Brisbin, 100 N. Y. 219, 3 N. E. 74), and it becomes the duty of the surrogate, in appointing an administrator of this estate with the will annexed. to succeed the present executors, in view of the relations which they bear to this estate, and the fact that the appellant is practically the only creditor, to

appoint such a person as will fairly represent the creditor and the estate.

It follows, from these views, that the decree of the surrogate settling the accounts of the executors should be reversed, and a further accounting ordered, and that the decree refusing to revoke the letters testamentary of said executors should be reversed, and the motion to revoke said letters testamentary should be granted, and an administrator of said estate with the will annexed be appointed in their place, with the costs of this appeal to appellant, to be paid by said executors personally. All concur.