In the Matter of the Accounting of JAMES HUGHES, as Administrator, etc.

| 95 | 55 |
| 128 | 74 |
| 95 | 55 |
| 131 | 348 |
| 95 | 55 |
| 160 | 96 |
| 95 | 55 |
| e173 | ²442 |

Where there are two administrations of an estate, one in the place of the domicile of the testator or intestate and the other in a foreign jurisdiction, whether the courts of the latter will decree distribution of the assets collected under the ancillary administration or remit them to the jurisdiction of the domicile is a question, not of jurisdiction, but of judicial discretion depending upon the circumstances of the particular case.

Administration upon the estate of an intestate who was domiciled at the time of his death, and who died in Pennsylvania, was first granted in this State; at the request of the administrator here, one was appointed in Pennsylvania, the former becoming surety upon the bonds of the latter. The bulk of the estate was in this State, it having been brought here from Pennsylvania by the New York administrator, who was one of the next of kin, after the death of the intestate, before his appointment and without authority of law, but without wrongful intent ; all of the next of kin of the intestate resided here. The rule of distribution in the two States is the same. Upon the accounting of the New York administrator the foreign administrator was permitted to intervene he claiming that there were creditors in his State, but he produced no evidence to substantiate the claim and his statements were proved to the effect that there was in his hands a surplus after payment of all debts and demands against the estate.    The intestate was a priest without a family, not engaged in business, and no claim against his estate has been presented to the New York administrator.    Held, that it was incumbent on the Pennsylvania administrator to show the existence in that State of unpaid debts of the estate requiring that the fund should be remitted, and, in the absence of such proof, it must be presumed that there are none ; that the assets being here gave to the surrogate of the county jurisdiction ; that the fact that they were unlawfully brought here did not deprive him of jurisdiction or of power to decree distribution; and that, as the only effect of remitting the fund to Pennsylvania would be to deplete it by subjecting

it to double commissions and unnecessary charges, a refusal of the sur-
rogate to decree distribution here was error.

*Parsons* v. *Lyman* (20 N. Y. 103), *Despard* v. *Churchill* (53 id. 192), distin-
guished.

(Argued January 16, 1884 ; decided February 26, 1884.)

APPEAL by James Hughes as administrator of the estate of
Peter Hughes, deceased, from a judgment of the General Term
of the Supreme Court, in the second judicial department, en-
tered upon an order made February 13, 1883, which affirmed a
decree of the surrogate of the county of Kings.

The decree was upon the final settlement of the accounts of
said administrator.   That portion of the decree appealed from
directed him to deliver the assets of the estate in his hands to
Matthew Carroll, who had been appointed administrator in
Pennsylvania, in which State the intestate was domiciled at
the time of his death.   All of the next of kin of the deceased
resided in this State ; after his death said James Hughes, who
was one of the next of kin, went to the residence of the de-
ceased, and received from his counsel the larger portion of the
assets of the estate which he brought to Kings county, and let-
ters of administration were issued to him by the surrogate of
that county. A portion of the assets having been left in Pennsyl-
vania, at the request of said Hughes the said Carroll applied
for and obtained letters of administration there.   Upon filing
the petition of said Hughes for an accounting said Carroll in-
tervened, claiming that there were debts in Pennsylvania, and
that the assets should be remitted there, and delivered to him
to be disposed of " as required by the laws of the domicile."

Further facts appear in the opinion.

*Jos. A. Burr, Jr.,* for appellant.   The court has jurisdiction
of the estate and power to distribute it here.   (2 R. S. 73,
§ 24 ; *Lawrence* v. *Elmendorf*, 5 Barb. 76 ; *Fretwell* v. *Mc-
Lemore*, 52 Ala. 124 ; *Harvey* v. *Richards*, 1 Mason, 380.)
The court having such jurisdiction will exercise it unless some
good reason appears why it should not. (*Parson* v. *Lyman*, 20
N. Y. 103 ; *Despard* v. *Churchill*, 53 id. 192 ; *Williams* v.

*Williams*, 5 Ind. 467; *Gilchrist* v. *Cannon*, 1 Coldwell [Tenn.], 581; *Fretwell* v. *McLemore*, 52 Ala. 124; *Harvey* v. *Richards*, 1 Mason, 380 ; *Mackey* v. *Case*, 18 How. [U. S.] 100.) In the absence of proof that the statute of distributions in Pennsylvania is any different from that here, the presumption is that it is the same as our own. (*Monroe* v. *Douglass*, 5 N. Y. 447; *Rice* v. *Harbison*, 63 id. 501.) The burden of proof is on the Pennsylvania administrator to show that there are unpaid creditors there. (1 Greenl. on Ev., 93, § 74; id., 100, § 79; Whart. on Ev., § 354.)

*Arthur J. Delaney* for respondent. In the absence of proof to the contrary, the laws of Pennsylvania, in regard to the administration of estates of resident intestates, must be presumed to be the same as the laws of this State, and the property of said intestate being under the protection of the said State, under the laws thereof, until the appointment of an administrator to take charge of the same for the benefit of the creditors and next of kin of said intestate, any interference therewith was unlawful. (Code of Civ. Pro., § 2592; *Monroe* v. *Douglass*, 5 N. Y. 447; *Stone* v. *Scripture*, 4 Lans. 186.) A person interested in said estate, although not cited, is entitled to appear upon the hearing upon the return of the citation to attend the accounting before said surrogate, and respondent was so permitted to appear and intervene herein. (Code of Civ. Pro., § 2731.) The custody, management and distribution of the personal estate, which was in the intestate's possession at his place of residence in Pennsylvania, became vested in respondent from the time of his appointment, and his title thereto related back to the date of the death of the said decedent. (*Schultz* v. *Pulver*, 11 Wend. 361, 363; 3 Paige, 182; *Lawrence* v. *Elmendorf*, 5 Barb. 73; 3 Redf. on Wills, chap. 5, § 16, subd. 2, 127 [ed. 1870]; Dayton on Surr. [3d ed.], p. 255, note *n* 1; Williams on Exec. 281, note *o*, part 2, book 1, chap. 1, p. 638 [8th Eng. ed.], notes *i, k, l*, p. 698 [6th Am. ed.].) The appellant having taken into his possession a large portion of the assets of said intestate at his late residence at

Braddocks, Pennsylvania, without being duly authorized to do so as administrator under the laws of the domicile of the decedent, became liable to account for the full value thereof to respondent, upon his appointment as such administrator of the intestate, at his said place of domicile in Pennsylvania. (2 R. S. 81, § 60; 3 Diosey's N. Y. Stat. Laws, 496; 3 R. S. [5th ed.] 168, § 78 [60].) When there are several administrators of one estate, the administration granted in the place of domicile of the deceased is the principal one, and that granted in any other State, although independent of the other, is subsidiary and auxiliary or ancillary thereto, and is merely supplemental to said principal administration, and said principal administrator may collect the effects of the deceased in any other country, and give a valid release to all who may have there incurred any liability to the estate. (*Parsons* v. *Lyman*, 20 N. Y. 103; 3 Redf. on Wills, chap. 1, § 2, subds. 6, 8–17, pp. 24–34; 1 Williams on Exec. [362] 419 [6th Am. ed.], note *u.*) Such subsidiary, auxiliary or ancillary administrators, after they have paid all claims of creditors in the jurisdiction of their appointment, may be ordered to remit the residue of the estate remaining in their hands to the principal administrator at the place of domicile of the intestate, to be disposed of and distributed to the persons entitled thereto, pursuant to the laws of the State of such domicile. (*Parsons* v. *Lyman*, 20 N. Y. 103; *Despard* v. *Churchill*, 53 id. 192, 199; Code of Civ. Pro., §§ 2700, 2701; Redf. L. & Pr., Surr. Ct. [2d ed.] 321–2.) Where there are no debts against the estate, the law of the domicile controls the disposition of the personal estate of the intestate, and the ancillary administrator cannot be allowed to draw into his jurisdiction any assets not locally situated within its limits. (*Schultz* v. *Pulver*, 11 Wend. 361, 363; 3 Paige, 182; 3 Redf. on Wills, pp. 20–35, chap. 1, § 2, subds. 12, 13, 14; *Lawrence* v. *Elmendorf*, 5 Barb. 73; 2 Kent's Com., §§ 431, 434; *Mothland* v. *Wireman*, 3 P. & W. [Penn.] 185; *Miller's Estate*, 3 Rawle [Penn.] 312; *Topham* v. *Chapman*, 1 Const. Ct. [Mills' So. Car. 283] 138. The withdrawal of the assets of the deceased from his domicile in the State of Pennsylvania

was in violation of the rights of the creditors of the decedent in that State. (*Lawrence* v. *Elmendorf*, 5 Barb. 73 ; *Davies* v. *Head*, 3 Pick. 128 ; Story on Confl. of Laws, §§ 524, 525 ; *Freeman's Appeal*, 68 Penn. St. 151.)   The effects of the decedent are to be administered under the authority of the local jurisdiction in which they were situated at the time of his death, and all of his personal estate is to be disposed of by the law of the place where he has his domicile, subject, in distant places only to the lawful claims of creditors, and, after such claims have been settled, the residue must be remitted to the place of domicile of the intestate for final disposition and distribution to the persons entitled thereto. (*Lawrence* v. *Elmendorf*, 5 Barb. 73 ; *Mothland* v. *Wireman*, 3 P. & W. 185 ; *Miller's Estate*, 3 Rawle, 312 ; *Page's Estate*, 75 Penn. St. 87 ; *Topham* v. *Chapman*, 1 Const. Ct. [Mills' So. Car.] 138.) Unless the appellant shows that there was no evidence that the assets were in possession of the intestate, at his late residence in Pennsylvania, at the time of his death, and that appellant wrongfully took possession of the same at said domicile, and carried the said assets away therefrom, and into this State, in violation of the law of Pennsylvania, then said judgment of the Supreme Court, affirming the decree of the surrogate, must be sustained and affirmed, and said appeal herein dismissed. (*Schultz* v. *Pulver*, 11 Wend. 361 ; 3 Paige, 182 ; Code of Civ. Pro., § 2545 ; *People* v. *A. & S. R. R. Co.*, 57 Barb. 204 ; *Otis* v. *Spencer*, 16 N. Y. 610 ; *Hunt* v. *Bloomer*, 13 id. 341.)

ANDREWS, J.   The surrogate of the county of Kings had jurisdiction to grant letters of administration of the goods, chattels and effects of the intestate, Peter Hughes, within this State by virtue of subdivision 4, sec. 23, art. 2, tit. 2, chap. 6, part 2 of the Revised Statutes.   The intestate died at Braddock, Pa., of which State he was an inhabitant, leaving no assets in this State, but leaving assets in Pennsylvania, which were subsequently brought into the county of Kings, and were within that county when the letters were granted.

So, also, the surrogate had jurisdiction on the final accounting of the administrator to decree final distribution of the estate of the intestate in his hands.

Where there are two administrators of a single estate, one in the place of the domicile of the testator or intestate and the other in a foreign jurisdiction, whether the courts of the latter will decree distribution of the assets collected under the ancillary administration, or remit them to the jurisdiction of the domicile, is not a question of jurisdiction, but of judicial discretion depending upon the circumstances of the particular case. This is the rule declared by STORY, J., in the leading case of *Harvey* v. *Richards* (1 Mason, 380), and the doctrine of that case has been expressly affirmed by this court in *Parsons* v. *Lyman* (20 N. Y. 103), and *Despard* v. *Churchill* (53 id. 192). This doctrine, however, does not interfere with the general principle of law that personal property is distributable, and that succession thereto is regulated, by the law of the decedent's domicile. The courts of the country, where the ancillary jurisdiction is granted, when decreeing distribution, apply the law of the domicile, unless such application will interfere with the rights of domestic creditors, or infringe some controlling principle of public policy. (*Harvey* v. *Richards, supra*; Story Con. Laws, § 524; *Dawes* v. *Head*, 3 Pick. 130.)

There being no principle of public law requiring the assets of a decedent to be remitted for distribution to the authority or jurisdiction of the domicile, it remains to consider whether the decree of the surrogate, in this case, remitting the assets in the hands of the New York administrator to the Pennsylvania administrator for distribution is justified by a sound judicial discretion in view of the particular circumstances. The administration here was prior in point of time. The letters to the appellant were issued January 5, 1880. The administrator in Pennsylvania was appointed January 12, 1880, upon the request of Hughes, the New York administrator, who became surety upon his bond. The assets in the hands of the New York administrator ready for distribution amount to $31,827.16, and comprise the bulk of the estate. The intes-

tate left five brothers and sisters, his only next of kin, all of whom reside in this State, and presumably consent to distribution here. It is not denied that the rule of distribution is the same in New York as in Pennsylvania.

It is assigned, as one reason in support of the decree of the surrogate, that there are creditors of the intestate in Pennsylvania whose debts are unpaid. If there are such creditors entitled to payment out of the fund in the hands of the administrator here, it would afford a reasonable ground for remitting it to the jurisdiction of the domicile. But the proof not only fails to show affirmatively the existence of creditors in Pennsylvania, but presumptively negatives their existence. The foreign administrator was permitted, upon his application to intervene on the accounting before the surrogate, to claim that there were such creditors. But he produced no evidence to substantiate the claim. On the contrary, it was shown by the testimony of the appellant, which was uncontradicted, that soon after his brother's death he went to Braddock, and after diligent inquiry was only able to find a debt of $400, and some small debts to servants and physicians owing by the intestate. He further testified that the Pennsylvania administrator recovered, with his assistance, certain assets of the intestate there, and afterward informed the appellant by letter that he had in his hands a surplus of $2,600 after paying all debts due and demands against the estate. Under these circumstances, we think it was incumbent on the foreign administrator to show that there were unpaid debts of the estate in Pennsylvania requiring that the fund should be remitted, and that in the absence of such proof it must be presumed that there were none. " If," said STORY, J., in *Harvey* v. *Richards* (*supra*), " the foreign executor chooses to lie by and refuses to render any account of the foreign fund in his hands, so far as to enable the court here to ascertain whether the fund is wanted abroad for the payment of debts or legacies or not, he has no right to complain if the court refuses to remit the assets, and distributes them among those who may legally claim them." The silence of the foreign administrator; the fact that

the intestate was a priest without a family, and not engaged in business; that no claim has been presented to the New York administrator by any creditor, although his appointment was known at the place of the intestates' domicile, are circumstances which strengthen the conclusion from the other evidence that this alleged ground for remitting the fund has no foundation.

We can conceive of but one other plausible ground for supporting the claim that the fund should be remitted to Pennsylvania, and that is that the assets now in possession of the New York administrator were in Pennsylvania at the death of the intestate, and were taken therefrom and brought into this State without authority of law. It appears that the bonds and securities were at the intestate's death in his house at Braddock, in charge of his housekeeper. The appellant, who resided in Brooklyn, went to Pennsylvania shortly after the testator's death, and after consulting counsel in Pittsburgh, and being advised that he had the right to do so, and believing that there were sufficient assets remaining in that State to pay all the debts there, brought the bonds and securities to Brooklyn and immediately applied for and obtained letters of administration there. The removal by the appellant of the assets from Pennsylvania was illegal. The jurisdiction over the assets of an intestate is local, and upon his death their care devolves of necessity upon the sovereignty of the country where they may be, until a legal representative of the intestate is appointed who shall be entitled to their custody. (*Heirs of Porter* v. *Heydock*, 6 Vt. 374.) The right of the domestic sovereignty over vacant assets pending the appointment of an administrator, besides being founded upon necessity, arises also from the general duty of the State to guard the interests of domestic creditors and claimants. Where assets so situated have been illegally removed from the jurisdiction of the domicile to the prejudice of domestic creditors, or others interested in the estate, it would we conceive be the plain duty of the courts in another jurisdiction where they were found to direct their return to the jurisdiction of the domicile. This course would be alike demanded by a sense of justice and the comity of States. A removal under such

circumstances would rightly be considered an act of usurpation to which courts would not lend their sanction. But conceding the illegality of the removal of the assets from Pennsylvania, how does the case now stand? The surrogate found as a fact that the removal by the appellant was without any wrongful intent. He was one of the next of kin, and none of them resided in Pennsylvania. There are no unpaid creditors in that State, and the only persons interested in the distribution are in the State of New York. The assets being in fact here, the surrogate of Kings county acquired jurisdiction to grant administration. He was not deprived of jurisdiction because the assets were irregularly brought here, nor does that fact deprive him of jurisdiction to decree distribution. The rights of all parties entitled to protection will be fully protected by a distribution by our courts. The only difference between a distribution here and a remission of the fund to Pennsylvania for distribution there, is that in the latter case the fund would be subjected to double commissions, the surrogate here having by his decree awarded commissions to the appellant. It would, "be an idle show of courtesy," under these circumstances to remit the fund to the foreign jurisdiction when the only effect would be to deplete it by unnecessary charges and expenses to the prejudice of all the parties beneficially interested.

In *Guier* v. *O'Daniel* (1 Binney, 349, note), the court in Pennsylvania distributed the property of an intestate domiciled in Delaware according to the laws of the domicile. In *Parsons* v. *Lyman* (*supra*) the court directed a residuum to be remitted to Connecticut, the jurisdiction of the domicile, because a question had arisen as to the construction of the will of the decedent, in respect to which the courts of Connecticut differed from our own. And it appeared that the executor, and one of the beneficiaries, and most of the assets were in that State. In *Despard* v. *Churchill* (*supra*) the court remitted the assets to California, because the bequests contained in the will, although valid by the law of California, the place of the testator's domicile, were invalid here. Both these cases turned upon special circumstances, but in both the court recognized the jurisdiction

asserted in *Harvey* v. *Richards.* We think the surrogate erred in refusing to decree distribution.

The judgment of the General Term and the decree of the surrogate should therefore be reversed, and the case remitted to the surrogate for further proceedings in accordance with this opinion, with costs to both parties to be paid out of the estate.

All concur.

Judgment accordingly.