## WATKINS v. EATON.

(Circuit Court, N. D. New York. September 15, 1909.)

1. WILLS (§§ 70, 436*)—VALIDITY AND CONSTRUCTION—WHAT LAW GOVERNS.

   Both by the New York statutes and by general law the validity and effect of a testamentary disposition of personal property situated in New York, made by the will of a testator who was a resident of another state, is governed by the laws of the state of such residence.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 184, 947; Dec. Dig. §§ 70, 436.*]

2. EXECUTORS AND ADMINISTRATORS (§ 523*)—FOREIGN ADMINISTRATION—DISPOSITION OF ASSETS.

   Whether personal property of a testator, situated in another state and in the possession of a probate court therein, shall be transmitted to the court of the domicile of the testator for distribution, is a matter of judicial discretion, to be exercised by any court having jurisdiction; but under the law of New York as settled by decision, where there is a dif-

ference. of opinion between the probate courts of the two jurisdictions as to the construction of the will, which has been probated in both, the property should be remitted to the jurisdiction of domicile.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 2329; Dec. Dig. § 523.*]

3. COURTS (§ 505*)—JURISDICTION OF FEDERAL COURTS—MATTERS OF PROBATE. Where funds belonging to the estate of a decedent are in the possession of a probate court of a state acquired in ancillary proceedings. a federal court cannot disturb such possession by ordering the funds transmitted to the principal administrator in another state; nor can it entertain a suit by such foreign administrator against the local administrator to determine the right to such fund, where by the law of the state the probate court having the fund alone has jurisdiction to make such adjudication, subject to review on appeal.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1410; Dec. Dig. § 505.*

Probate jurisdiction, see note to Bedford Quarries Co. v. Thomlinson, 36 C. C. A. 276.]

Bill in equity by William L. Watkins, administrator with the will annexed of Elizabeth S. Eaton, deceased, against Hervey E. Eaton, as executor of the last will and testament, and of the codicil and memorandum thereto attached, of Elizabeth S. Eaton, deceased. On demurrer to bill. Demurrer sustained.

A. F. & F. M. Freeman (B. M. Thompson, of counsel), for complainant.

Carlos J. Coleman (Edwin H. Risley, of counsel), for defendant.

RAY, District Judge. The main object and purpose of this bill of complaint is to secure a decree directing the property (wholly personal) of the estate of Elizabeth S. Eaton, deceased, to be transferred to the complainant, William S. Watkins, as administrator with the will annexed of the estate, etc., of said decedent, appointed by the probate court of the county of Washtenaw, state of Michigan, by the defendant, Hervey E. Eaton, as executor of the last will and testament of said testatrix, appointed such by the Surrogate's (or Probate) Court of Madison county, state of New York, and who now has possession of the same, or the main portion of the same. Watkins, the complainant, resides at Ann Arbor, in the state of Michigan, and Hervey E. Eaton resides at Eaton, Madison county, N. Y. The testatrix, Elizabeth S. Eaton, died at Ann Arbor, Mich., of which state she was a citizen, resident, and inhabitant, on or about May 17, 1906, leaving a last will and testament and a codicil thereto, and also leaving personal property, a small part of which, about $600, consisting of furniture, household effects, etc., was then situated in the state of Michigan, but the main portion of which, some $50,000, or more, was situated and located in said county of Madison, N. Y., and was in the possession of her agent, the defendant, Hervey E. Eaton, who, in and by said last will and testament, made and executed at Eaton aforesaid, while the testatrix was there temporarily, was made sole executor thereof. The bill alleges that this property in New York consisted of stocks, bonds, and other choses in action.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

On or about March 31, 1906, said decedent, under the name Elizabeth Storms, at Ann Arbor, Mich., made and executed the codicil to the said will above referred to, in and by which she made some change as to the persons who were to care for her invalid brother, George A. Storms, and the amount to be paid them for such care. By the will the amount to be paid from the income for this purpose is $100 per month to Susan C. Storms, and by the codicil $75 per month to Genevieve S. Jacobs and N. P. Jacobs, her husband. The estate is to be divided and paid over to certain legatees named on the death of a sister, Susan C. Storms, and the said brother, George A. Storms. All the legacies and shares that can be paid before the happening of such event have been paid, and there is little, if anything, to be done by way of administration, except to hold and invest the property and pay for the support of George A. Storms, as directed, until the happening of the event referred to. It is not claimed that the testatrix owed any debts to any person or persons in the state of New York, and if she did they have been paid. There are no debts to be paid in the state of Michigan. No legacy was given to any person residing in New York, except three portraits to Hervey E. Eaton and a memorial window for a church in Syracuse, which the bill alleges have been satisfied. All the other legatees reside in Michigan, and did at the time the will and codicil were executed.

Soon after the death of the testatrix, Elizabeth S. Eaton, or Storms, the executor named in the will, who had it in his possession, as well as the property mentioned, duly applied to the Surrogate's Court of the said county of Madison, N. Y., to have the said will and codicil proved and admitted to probate in said court. A citation issued and was duly served as required by the laws of the state of New York on all the persons interested in the estate. This service was by publication, not personally, and the legatees resided and were in Michigan at the time, except two whose specific legacies have been paid. Rachel P. Dickenson, Susan C. S. Higgins, and Leah C. Kersey, Leah C. Kersey being one of the residuary legatees, appeared and contested said will and codicil in said Madison County Surrogate's Court on the grounds, among others, that the said will and codicil were not her act, her last will and testament and codicil thereto, and that she was mentally incompetent to make and execute same. The issues presented were tried, evidence taken, and the surrogate of Madison county made findings of fact and conclusions of law, and a decree was entered accordingly that same was the valid last will and testament and codicil thereto of said Elizabeth S. Eaton, and that she was competent to execute same, and admitting same to probate, and thereupon letters testamentary of said last will and testament and codicil were duly issued by said surrogate to the defendant, Hervey E. Eaton, who remains such executor, and who has proceeded and is proceeding to execute such will and codicil according to the terms thereof. Such decree was not appealed from. Soon after the death of said testatrix, and in July, 1906, said Higgins, Dickenson, and Kersey filed their petition for the proof of said will, not including the codicil, which they alleged to be invalid by reason of the mental incompetency of the testatrix to execute same, in the probate court of Washtenaw coun-

ty, Mich., of which county the testatrix was a resident when she executed the will and codicil and at the time of her death, and asked that the will be admitted to probate, and that the codicil be rejected as invalid for the reason stated, and that letters of administration with the will annexed of said will issue to Ralph Phelps, Jr. Notice pursuant to the laws of the state of Michigan of such application and proceeding was duly given to all interested parties, and such proceedings were had that December 1, 1908, W. L. Watkins was appointed administrator with the will annexed of the estate of said Elizabeth S. Eaton by said probate court of the county of Washtenaw, state of Michigan, and he duly qualified as such, and remains such administrator. This service was by publication as required by law of Michigan.

It is alleged and conceded that the defendant, as executor, is paying from the estate, for the support and care of George A. Storms under, and in recognition of the validity of, the codicil to said will; that is, at the rate of $75 per month, instead of $100 per month, as provided in the will itself, which is $300 per year less than the will as proved and admitted to probate in the courts of Michigan permits or authorizes, and that the sum paid is being paid to a person or to persons not authorized to receive it, and that no payment is being made to the one entitled thereto, if the codicil is invalid and no part of the testamentary disposition. The executor claims that, the will and codicil having been declared valid and admitted to probate in New York, and the decree not appealed from, he is protected in proceeding and acting under it. The complainant, on the other hand, claims that the validity of the will and codicil is determined by the court of Michigan and that its decree prevails; that distribution and payment over of the funds is governed by the law of Michigan; and that, the codicil having been duly adjudicated void there, although held valid here in New York prior to such adjudication, the executor, Eaton, must be governed as to the validity of the codicil by the decree in Michigan. The complainant also contends that, all purposes of administration in New York having been fully met and satisfied, that is, there being no unpaid debts or legacy due or coming due to any person in New York, the estate should be delivered by Eaton to the administrator with the will annexed in Michigan for purposes of administration and distribution according to the law of the domicile of the testatrix. The defendant claims that this transfer or delivery over is a matter of discretion, to be exercised by the Probate or Surrogate's Court of Madison County, N. Y., alone, and that the Circuit Court of the United States has no jurisdiction or power in the matter. The bill in substance and effect charges that there is a devastavit of $860 per year in the payments made by the defendant for the care of George A. Storms, and that the same is being paid to the two Jacobses without authority, inasmuch as the codicil has been rejected by the Michigan courts, and that $100 per month should be paid to Susan C. S. Storms for the purpose.

The provisions of the will in this regard read:

"Sixth. I give and bequeath to my sister Susan C. Storms, during the term of her natural life, from the income of my estate, one hundred dollars per month, provided and on condition that she care for and make a home for my mute brother George Albert Storms during his lifetime.

"Seventh. Should my sister Susan C. Storms die before my brother George Albert Storms, then and in that case I hereby direct and empower my said executor to pay to my sister Leah Catherine Kersey, from the income of my estate, the sum of fifty dollars per month for caring for and making a home for my said brother George Albert Storms during his lifetime, and in case George Albert Storms would survive both Susan C. Storms and Leah Catherine Kersey then my said executor is hereby authorized and directed to make other suitable and sufficient arrangements for such care and home and to pay for the same."

The provisions of the codicil are:

"Whereas, my brother George A. Storms is unable to care for himself through physical defects and infirmities, it is my wish that my sister Genevieve S. Jacobs and her husband, Nathaniel P. Jacobs, do so care for him and make his home with them during the term of his natural life and that they shall receive the sum of seventy-five dollars ($75) per month compensation during that time. In the event of his death before that of Genevieve S. Jacobs or Susan S. Higgins, I direct that they shall share alike with the other heirs in the general and final distribution of my estate."

By the laws of the state of New York this will was properly proved in the Surrogate's Court of the county of Madison, N. Y., and that court had jurisdiction to prove same and issue letters testamentary. By chapter 18, Code of Civil Procedure, state of New York, relating to "Surrogates' Courts and Proceedings Therein" (title 1, art. 1, § 2472), it is provided:

"Each surrogate must hold, within his county, a court, which has, in addition to the powers conferred upon it, or upon the surrogate, by special provision of law, jurisdiction as follows:

"1. To take the proof of wills; to admit wills to probate; to revoke the probate thereof; and to take and revoke probate of heirship.

"2. To grant and revoke letters testamentary and letters of administration, and to appoint a successor in place of a person whose letters have been revoked.

"3. To direct and control the conduct, and settle the accounts, of executors, administrators, and testamentary trustees; to remove testamentary trustees, and to appoint a successor in place of a testamentary trustee so removed.

"4. To enforce the payment of debts and legacies; the distribution of the estates of decedents; and the payment or delivery, by executors, administrators, and testamentary trustees, of money or other property in their possession, belonging to the estate. * * *

"6. To administer justice, in all matters relating to the affairs of decedents, according to the provisions of the statutes relating thereto. * * *

"This jurisdiction must be exercised in the cases and in the manner prescribed by statute."

By section 2476, same chapter and title, it is provided, amongst other things, as to when and what wills may be proved:

"3. Where the decedent, not being a resident of the state, died without the state, leaving personal property within that county, and no other; or leaving personal property which has since his death, come into that county, and no other, and remains unadministered."

By title 3, art. 1, § 2611, Code Civ. Proc., relating to "Granting and Revoking Probate, Letters Testamentary, and Letters of Administration, Foreign Wills, Ancillary Letters," it is provided:

"What Wills may be Proved: Change of Residence Not to Affect Validity.— A will of real or personal property, executed as prescribed by the laws of the state, or a will of personal property executed without the state and within the United States, the Dominion of Canada, or the Kingdom of Great Britain

and Ireland, as prescribed by the laws of the state or county where it is or was executed, or a will of personal property executed by a person not a resident of the state, according to the laws of the testator's residence, may be proved as prescribed in this article."

Section 2611 limits the proof of wills of personal property executed by a resident of the state of Michigan, when executed in the state of New York, to those executed according to the laws of the state of Michigan.

Section 2694, art. 7, tit. 3, Code Civ. Proc., provides:

"What Laws Govern as to Effect of Testamentary Disposition.—The validity and effect of a testamentary disposition of real property, situated within the state, or of an interest in real property so situated, which would descend to the heir of an intestate, and the manner in which such property or such an interest descends, where it is not disposed of by will, are regulated by the laws of the state, without regard to the residence of the decedent. Except where special provision is otherwise made by law, the validity and effect of a testamentary disposition of any other property situated within the state, and the ownership and disposition of such property, where it is not disposed of by will, are regulated by the laws of the state or country, of which the decedent was a resident at the time of his death."

Elizabeth S. Eaton, the decedent, was a resident of the state of Michigan when she made her will, and when she made the codicil thereto, and at the time of her death. Therefore, there being no special provision otherwise made by law, the validity and effect of the testamentary disposition of her personal property situated in the state of New York are regulated by the laws of the state of Michigan. Cross et al. v. U. S. T. Co. et al., 131 N. Y. 330, 339, 346, 30 N. E. 125, 15 L. R. A. 606, 27 Am. St. Rep. 597; Despard v. Churchill, 53 N. Y. 192; Dammert et al. v. Osborn et al., 140 N. Y. 30, 35 N. E. 407, Id., 141 N. Y. 564, 35 N. E. 1088; Cong. U. Soc. v. Hale, 29 App. Div. 396, 400, 51 N. Y. Supp. 704; Wright v. Mercein, 34 Misc. Rep. 414, 418, 69 N. Y. Supp. 936; Matter of Hughes, 95 N. Y. 55, 60; Story on Conflict of Laws (7th Ed.) §§ 465, 468, 473; Parsons v. Lyman, 20 N. Y. 103; 18 Cyc. p. 74. In 18 Cyc. p. 74, it is said:

"With regard to creditors the administration of the assets of a deceased person is governed exclusively by the law of the place where the executor or administrator acts and from which he derives his authority, and the domicile of the decedent or of the creditor cannot authorize the introduction of another law to defeat the law of the situs of the administration. With regard to heirs and distributees the rule is that personal estate is to be administered according to the law of the decedent's last domicile, while real estate is administered according to the law of the place where it is situated."

This is, I think, the law. The probate court of the state of Michigan, having jurisdiction, has judicially declared and held, by decree duly entered and not appealed from or reversed, that the will referred to is the last will and testament of Elizabeth S. Eaton, and that the codicil referred to is no part thereof or of her testamentary disposition, and is invalid, as she was mentally incompetent to make or execute same. The Surrogate's Court of the county of Madison, N. Y., has held exactly the contrary. In effect the personal property of Elizabeth S. Eaton, the testatrix, situated in the state of New York, as to the income, is being disposed of by the executor in accordance with an alleged testamentary disposition thereof which the Surrogate's Court

of Madison county, N. Y., has held to be valid, but which the probate court of the county of Washtenaw, Mich., the county of her residence at the time of the execution thereof and at the time of her death in the state of Michigan, by decree duly made and entered, and which has not been appealed from or reversed, has adjudged to be invalid and no part of her will or testamentary dispositions. That decree was made under and pursuant to, and, presumably, in accordance with, the laws of the state of Michigan, the state of the residence of the deceased testatrix. It would seem to be the law of the state of Michigan that this codicil is void and no part of the will of Elizabeth S. Eaton, deceased. The probate court of that state has so adjudicated. This is so unless the decree of the Surrogate's Court of Madison county, N. Y., prevails over that of the probate court of Washtenaw county, Mich. While that decree was made subsequent to that entered in the Surrogate's Court of the county of Madison, N. Y., the proceedings in each court were pending concurrently.

However, the decree in Madison county is not res adjudicata between these parties or the parties interested in the estate, unless it be Rachel P. Dickenson, Susan C. S. Higgins, and Leah C. Kersey. These persons were served by publication, and actually personally appeared in the Madison County Surrogate's Court, and answered and litigated the question of the validity of the codicil, and the mental competency of the testatrix to make and execute it. If they are bound and concluded by the decree of the Madison County Surrogate's Court, then they have no interest in the compensation to be paid for the care, etc., of George A. Storms. And, if that be so, being bound here, they ought to be bound everywhere; and hence the administrator with the will annexed in Michigan, if they are so bound, would be bound to regard the codicil as part of the will in making payments, and follow it. This would present the inconsistency of one will in New York and another and different will in Michigan. The administrator with the will annexed in Michigan cannot be called upon to execute two wills, inconsistent in their provisions, or to obey two courts, one holding the codicil valid and the other holding it invalid. Is the decree of the probate court of Washtenaw county in the state of Michigan to be held to prevail over that of the Surrogate's Court in New York? This will relates solely to personal property. This property must eventually be distributed according to the laws of the state of Michigan, unless it be the income paid for the support of Storms. But there is no inflexible rule that it shall be distributed by the courts of Michigan. Whether the personal estate shall be transmitted to the court of the domicile of the testator for distribution seems to be a matter of judicial discretion, to be exercised, of course, by any court having jurisdiction in the premises. Parsons v. Lyman, 20 N. Y. 103; Matter of Hughes, 95 N. Y. 55, 60; Cross et al. v. U. S. T. Co. et al., 131 N. Y. 330, 347, 30 N. E. 125, 15 L. R. A. 606, 27 Am. St. Rep. 597; Harvey v. Richards, 1 Mason, 381–407, Fed. Cas. No. 6,184; 18 Cyc. 1235, and cases there cited; Despard et al. v. Churchill, 53 N. Y. 192.

But it has been held by the Court of Appeals of this state that where there is a difference of opinion between the surrogate or probate courts of the two jurisdictions as to the construction of the same will, admit-

ted to probate in both jurisdictions, the personal estate should be remitted to the courts of the state of the domicile of the testator for distribution in accordance with the laws of such domicile. Parsons et al. v. Lyman et al., 20 N. Y. 103. In that case the Court of Appeals held:

"The rule that personal property is subject to the law which governs the person of its owner, as to its transmission by bequest or intestacy, though founded on international comity, is equally obligatory upon our courts as a legal rule of purely domestic origin. * * * Whether the courts of this state are to decree distribution of the assets collected here under an ancillary administration granted by them, or to remit the disposition thereof to the courts of the testator's domicile, is not a question of jurisdiction, but of judicial discretion, upon the circumstances of the particular case. The testator died a resident of Connecticut, as were his executors and legatees. Five-sixths of the estate was before the probate court of that state for accounting and distribution, and the executor desired to remit to that jurisdiction the distribution of the remainder which had been collected by virtue of administration granted to him by the surrogate of New York. Several of the legatees who, after the testator's death, became residents of this state, insisted that the distribution should be decreed by the surrogate of New York, to whom the executor had applied for a final settlement of his accounts. It appeared that the surrogate differed in opinion from the courts of Connecticut in reference to the construction of the will. *Held*, that the surrogate should have remitted the distribution to the courts of Connecticut."

This, as matter of course, would seem to be the sensible and proper rule, and one that should be followed without question under ordinary circumstances. If the Surrogate's Court of Madison county, N. Y., is at variance with the probate court of Washtenaw county, Mich., the state of the domicile of the testatrix at the time of her death, and distribution, including payment of income, is to be made according to the law of the state of Michigan, where the legatees eventually entitled to the corpus of the estate reside, it would seem that the property, after satisfaction of all debts and legacies here—and there are none—should be remitted to that state on sufficient bond being given by the administrator with the will annexed there. The title to the personal property of a testate or of an intestate is not absolute, but in trust for the benefit of the legatees or distributees as the case may be; and as this estate is to be held by either the executor or by the administrator with the will annexed for a long term of years, probably, it would seem that there ought to be security, and that it ought to be held in the jurisdiction where the parties ultimately entitled are domiciled. Despard et al. v. Churchill et al. is not particularly pertinent here, as there the personal estate was remitted to California, for the reason that, while some of the executors resided in New York state, the material provisions of the will were void under the laws of this state, but valid in the state of California, the domicile of the testator, and the courts of this state would not aid in enforcing a will contrary to our statutory law. The court, therefore, directed that after the payment of certain legacies, valid by the laws of New York and directed to be paid by the executors here, the balance of the estate be remitted to the state of California, to be there distributed. In Massachusetts it is held that after payment of debts the personal assets remaining must be remitted to the place of the testator's domicile for the payment of legacies, etc. Dawes v. Boylston, 9 Mass. 337, 6 Am. Dec. 72; Richards v. Dutch, 8 Mass. 506.

In Despard v. Churchill, supra, the court, per Folger, C. J., said:

"Personal property is subject to the law which governs the person of its owner as to its transmission by last will and testament; and this principle, though arising in the exercise of international comity, has become obligatory as a rule of decision by the courts. Parsons v. Lyman, 20 N. Y. 103. And, as a general rule, the distribution of personal property, wherever made, must be according to the law of the place of the testator's domicile. Harvey v. Richards, 1 Mason, 381–407, Fed. Cas. No. 6,184. The cases are not uncommon in which a testamentary disposition made in a foreign jurisdiction has controlled the transmission of personal property in this. Usually the administration of the estate has been committed by the will to citizens of that jurisdiction. They have acquired the possession and control of the property through voluntary payment or surrender, or, by making probate of the will here, have obtained auxiliary letters testamentary, and under these have enforced collection or surrender. In such case, those charged with the administration are liable to account here for the assets collected by the authority granted here. It seems to have been generally held that, where there are domestic creditors of the estate, payment of the debts may be decreed out of the assets. * * * The question then arises, under the particular circumstances of this case, whether the assets in this state should not be remitted to the executors in the state of California to be administered, as they may be, in accordance with the directions of the will, under the laws of that state. As has been stated, the courts of this state may not directly aid in carrying out here a bequest which is in violation of its statute law and contrary to a policy of which it is tenacious; and yet they may not hold the bequest void, when it is valid by the law of the state by which the disposition of the property is to be governed. The one would be to transgress the written law of this state; the other would be to disregard an unwritten rule of law, well settled, and of extensive and frequent application. * * * There are no creditors of the estate in this state to be protected. The legatees here are protected by the payment of the legacies to them from the assets. The next of kin of the testator are also the annuitants under the provision of the will which is void by our law. As annuitants, they must soon rely mainly upon the fund, the executors, and the courts in California. If to them as next of kin were adjudged here a distribution of the property here, it might not prevent them from claiming there as annuitants. Thus by conflict of laws and adjudications there would be a measurable thwarting of the testamentary intention, and the giving to them of more than the testator designed. It seems, then, that the rule of law above mentioned and the circumstances of the case indicate that the judgment of the Special Term directing a distribution of the assets in this state among the next of kin was not well advised, and that the judgment of the General Term, reversing that of the Special Term in that respect, was proper."

This absolute rule of the Massachusetts cases cited does not prevail in New York, however, or in the federal courts, and by statute remission is now discretionary in Massachusetts. In Matter of Hughes, supra, the court held that as the only purpose of remitting to the courts of Pennsylvania would be mere distribution, and the rule of distribution being the same in both states, that such remission would result in double commissions and unnecessary charges, and therefore the refusal of the court to decree distribution here was error. But the court said (95 N. Y. 60):

"This doctrine, however, does not interfere with the general principle of law that personal property is distributable and that succession thereto is regulated by the law of the decedent's domicile. The courts of the county where the ancillary jurisdiction is granted, where decreeing distribution, apply the law of the domicile, unless such application will interfere with the rights of domestic creditors or infringe some controlling principle of public policy."

But the case now before this court as presented by the bill of complaint shows (1) domicile of the testatrix in Michigan; (2) all or

nearly all the legatees and distributees domiciled in Michigan; (3) Storms, for whose benefit the income of the estate is to be used, domiciled in Michigan; (4) no legatee or creditor in New York; (5) the will proved in Michigan according to the laws of the testatrix's domicile, and also proved in New York where the main part of the assets are, but with a codicil added and recognized as valid which the Michigan court has repudiated as invalid; (6) the executor named in the will residing in New York and fully recognizing and acting under the provisions of the codicil. These facts, under the decisions in Parsons v. Lyman and Harvey v. Richards, demand, unless it be the presence here of the executor named in the will, but who has not qualified or taken letters testamentary in Michigan, that the assets be transmitted to Michigan for distribution in due course. But I do not see that the residence here of the executor named in the will, and to whom letters have issued here, should control. Clearly this fact is without force, unless the codicil is to be recognized as valid and enforced.

But it is said and urged that, as the administrator with the will annexed appointed by the Michigan court has not taken out ancillary letters here, he has no standing to maintain this or any action here, even in the Circuit Court of the United States; that he could not even maintain a proceeding in the Surrogate's Court in Madison county, N. Y., to have the executor here settle his accounts and then pay over or transmit the assets to the Michigan court; in short, that he has no standing in New York to invoke the jurisdiction of the said Surrogate's Court, or to ask it to exercise its judicial discretion in the matter of such transmission—cannot even set the court in motion. But the will of the testatrix has already been proved here, the will recorded here, and letters testamentary thereon have issued here. Clearly this is all-sufficient in these regards. There cannot be double probate of the same will in the same court, or double issue of letters to two persons by the same court. In the eye of the law the proof of the will in Madison county, N. Y., and the issue of letters there, is not the principal administration, but ancillary in its very nature. The principal administration is that of the domicile of the intestate testator or testatrix as the case may be. 3 Redfield on Wills (3d Ed.) 29 (26); Churchill v. Prescott, 3 Bradf. Sur. (N. Y.) 233; Suarez v. Mayor, 2 Sandf. Ch. (N. Y.) 173; Dammert v. Osborn, 140 N. Y. 30, 39, 35 N. E. 407. In this last case (Dammert v. Osborn) the court is emphatic, reversing the court below, in declaring that when a foreign will is valid at the place of the domicile of the testator—in that case Peru—it is valid here, even if invalid under our laws if made by a party domiciled here, and that the will must be construed and enforced according to the law of the domicile. Said the court:

"At every stage of the inquiry pressed upon us by this appeal, it is important to keep in view a fundamental fact, established by uncontradicted evidence at the trial and conceded upon the argument, and that is that the bequest to the Sevilla Home was perfectly valid by the law of Peru, the domicile of the testator, which governed his personal property, wherever it was at the time of his death. The validity of the gift by the law of the domicile necessarily involves the conclusion that it is not affected, under that law, by the fact that at the time of the testator's death there was no trustee competent to take; or that the estate did not vest within a period measured by lives, or

by the general and indefinite nature of the trust, nor any other local rule that would defeat the intention of the testator in case it had been a domestic will. The general principle that a disposition of personal property, valid at the domicile of the owner, is valid everywhere, is of universal application. It had its origin in that international comity which was one of the first-fruits of civilization, and in this age, when business intercourse and the process of accumulating property take but little notice of boundary lines, the practical wisdom and justice of the rule is more apparent than ever. It would be contrary to the principles of common justice and right, upon which the rule is founded, to permit a testamentary disposition of personal property, valid by the law of the domicile, to be annulled or questioned in every other country where jurisdiction was obtained over the property disposed of or the parties claiming it, except for the gravest reasons. * * * Our courts may in certain cases decline to administer the gift, and remit the property to the principal seat of administration, but they cannot divest the title of one or transfer it to another contrary to the law of the domicile. That law is part of the disposition and the foundation of all title under it, and it cannot be disregarded, to the prejudice of one and the benefit of another, any more than the other parts of the instrument."

And, says the Court of Appeals, in N. Y. Life Ins. & Trust Co. v. Viele, 161 N. Y. 11, 55 N. E. 311, 76 Am. St. Rep. 238:

"It is well settled that the law of the testator's domicile must prevail in the interpretation of a will."

This is expressly decided in Harrison v. Nixon, 9 Pet. 483, 504, 505, 9 L. Ed. 201. And so it is laid down and held that the law of the domicile of the testator must determine and prevail as to the mental and other competency of the testator to make the will in question. Willard on Executors, 59; Story, Conflict of Laws, §§ 465, 468; Lawrence v. Kitteridge, 21 Conn. 582, 56 Am. Dec. 385; Holmes v. Remsen et al., 4 Johns. Ch. (N. Y.) 460, 8 Am. Dec. 581; Isham v. Gibbons, 1 Bradf. Sur. (N. Y.) 69; 2 Thomas, Law of Estates, 1277. Says Willard, supra:

"It appears to be the generally received doctrine, at the present day, that the status or capacity of the testator to dispose of his personal estate by will, depends upon the law of his domicile."

And, further:

"The law of the testator's domicile at the time of his decease governs as respects his testamentary capacity."

Says Story, supra:

"And, first, in relation to testaments of movable property: So far as respects the capacity or incapacity of a testator to make a will of personal or movable property, we have already had occasion to consider the subject in another place. The result of that examination was that the law of the actual domicile of the party, at the time of the making of his will or testament, was to govern as to that capacity or incapacity. * * * The same doctrine is now as firmly established in America. The earliest case in which it was directly in judgment was argued in the Supreme Court of Pennsylvania in 1808; and this case may be truly said to have led the way to the positive adjudication of this important and difficult doctrine. There a foreign testator domiciled abroad had made a will of his personal estate, invalid according to the law of his domicile, but valid according to the law of Pennsylvania; and the question was whether it was competent and valid to pass personal property situate in Pennsylvania. The court decided that it was not, and asserted the general doctrine that a will of personal estate must, in order to pass the property, be executed according to the law of the place of the testator's domicile at the time of his death. If void by that law, it is a nullity everywhere, although it

is executed with the formalities required by the law of the place where the personal property is locally situate. The court asserted that in this respect there was no difference between cases of succession by testament and by intestacy. The same doctrine has been since repeatedly recognized by other American courts, and may now be deemed as of universal authority here."

If this be the law, has any court aside from the Surrogate's Court of Madison county, N. Y., and the appellate courts of the state, power or jurisdiction so to declare and adjudicate and enforce its decree? It is a general proposition of law that the federal courts, outside the District of Columbia, have no probate jurisdiction strictly as such. Fouvergne v. City of New Orleans, 18 How. 470, 15 L. Ed. 399; Tarver v. Tarver, 9 Pet. 174, 9 L. Ed. 91; Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906, 37 L. Ed. 867; Farrell v. O'Brien, 199 U. S. 89, 25 Sup. Ct. 727, 50 L. Ed. 101. In Farrell v. O'Brien, supra, the court held:

"As the authority to make wills is derived from the state, and the requirement of probate is but a regulation to make a will effective, matters of pure probate, in the strict sense of the words, are not within the jurisdiction of courts of the United States."

But it is equally well settled that, as between citizens of different states, where one has an interest in an estate of personalty as legatee or distributee, the courts of the United States may enforce such rights and interests if the courts of general jurisdiction of the state where the administrator or executor resides and has the property and was appointed may enforce such rights. This is but the enforcement of the laws of the state in the federal courts. It is not the exercise of probate jurisdiction. Byers v. McAuley, 149 U. S. 608, 621, 13 Sup. Ct. 906, 37 L. Ed. 867.

But in such case we are again confronted with the proposition: Can the federal court, confronted by a will of the testatrix proved and admitted to probate in the proper Surrogate's Court of the state of New York, whose laws the court is called upon to enforce, or under whose laws it is acting, not the state of the domicile of the testatrix, and also confronted by another will of the testatrix, admitted to probate in the proper probate court of the domicile of the testatrix, decide between them and enforce the will of the domicile, or must it presume, and act on the presumption, that the will recognized by the probate court of New York is the legal and valid will? Can the federal court in substance and effect, when it cannot do it directly in a suit for the purpose of establishing one will or annulling another, Farrell v. O'Brien, 199 U. S. 89, 25 Sup. Ct. 727, 50 L. Ed. 101, decree that the will admitted to probate at the domicile is the legal and valid will as against one admitted to probate elsewhere? Can the federal court decree or direct that the personal estate in the hands of the ancillary executor be held and delivered to the administrator with the will annexed in the place of the testator's domicile, that of the principal administration?

In Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906, 37 L. Ed. 867 (and before cited), the court held:

"It is a rule of general application that, where property is in the actual possession of a court of competent jurisdiction, such possession cannot be disturbed by process issued out of another court. An administrator appointed by

a state court is an officer of that court, his possession of the decedent's property is the possession of that court, and as such it cannot be disturbed by process issued out of a federal court. The jurisdiction of the federal courts is a limited jurisdiction, depending either upon the existence of a federal question or the diverse citizenships of the parties; and where these elements of jurisdiction are wanting it cannot proceed, even with the consent of the parties. Federal courts have no original jurisdiction in respect to the administration of decedents' estates, and they cannot, by entertaining jurisdiction of a suit against the administrator, which they have the power to do in certain cases, draw to themselves the full possession of the res, or invest themselves with the authority of determining all claims against it. A citizen of another state may proceed in the federal courts to establish a debt against the estate, but the debt thus established must take its place and share in the estate as administered by the probate court. It cannot be enforced by direct process against the estate itself. Therefore a distributee, citizen of another state, may establish his right to a share in the estate, and enforce such adjudication against the administrator personally or his sureties, or against other persons liable therefor, or proceed in any way which does not disturb the actual possession of the property by the state court. In this case it was reversible error for the Circuit Court to take any action or make any decree looking to the mere administration of the estate, or to attempt to adjudicate as between themselves the rights of the litigants, who were citizens of the state of Pennsylvania; the res being in the possession of a court of that state."

It would seem to follow that the personal estate of Elizabeth S. Eaton, situated in the state of New York, is now in the possession of the Surrogate's Court of the county of Madison, N. Y., a court of competent jurisdiction; that the possession of such property by such court cannot be. disturbed by any process issued out of the federal court; and that a decree cannot be pronounced and enforced by this court that the executor deliver the property in his hands as an officer of that court to the administrator with the will annexed appointed by the Michigan court. But I do not see that this case denies the right and power of this court to adjudicate the rights of the parties and leave the execution of the adjudication to the Surrogate's Court. It is, as we have seen, the law of the state of New York, as well as that of the state of Michigan and of all the states, that the estate of a decedent testate or intestate must be distributed in accordance with the law of the decedent's domicile, that such law governs, and that the law of the domicile of a testator determines what his will is, including its construction.

In Byers v. McAuley, supra, May McAuley, domiciled in Pennsylvania, died owning personal property as to which she died intestate, but leaving a writing, purporting to be her last will and testament, disposing of all or certain of her real estate situate in that state. This instrument was admitted to probate in Allegheny county, Pa., as her will, and letters testamentary with the will annexed issued to one Byers. He rendered his account to the court appointing him, and the same was approved, and the amount for distribution fixed, and it was put upon the audit list for distribution on March 29, 1887. On March 28, 1887, a bill in equity was filed in the Circuit Court of the United States for the Western District of Pennsylvania, by certain nonresidents of Pennsylvania interested in the estate, against the administrator with the will annexed and others interested in the estate, some of whom were residents of Pennsylvania, which bill set forth the death of May McAuley, the will, that there were two classes of claimants, that the will

was null and void, and that there was a large amount of personal estate in the hands of the administrator for distribution. Relief was demanded that the administrator render an account of the personal estate, that the parties entitled be ascertained and determined and distribution made, that the will be declared null and void, that the administrator be enjoined from disposing of same, that some person be appointed to take charge of such real estate, and that same be partitioned and sold, and the proceeds divided amongst those entitled, and for general relief. A plea in bar, setting up the proceedings in the orphans' court of Pennsylvania, answering to the surrogates' and probate courts of certain states, was filed and overruled. The case went to a hearing on answer and replication. An accounting was had before a master. The will was held valid, the proceeds of the real estate directed to be paid to the parties named therein, the rights of the two sets of claimants to the personal estate were adjudged and determined, and payment directed accordingly. From the decree appeals were taken, and the jurisdiction of the Circuit Court challenged, as it was from the beginning. It will be noted that this was a suit by nonresident parties directly entitled to share in distribution of the personal estate and claiming to have an interest in the real estate because of the alleged invalidity of the will. The Supreme Court of the United States (see page 620 of 149 U. S., and page 910 of 13 Sup. Ct. [37 L. Ed. 867]) upheld the jurisdiction of the Circuit Court of the United States in the premises, and its right to entertain jurisdiction in behalf of all citizens of other states and "to determine and award their shares in the estate." This determination necessarily involved the question whether the first cousins took the whole of the personal, or whether second cousins were entitled to share, and on this question it was held that the Circuit Court decided and adjudged correctly, as it followed the decisions of the highest court of Pennsylvania (see page 621 of 149 U. S., and page 911 of 13 Sup. Ct. [37 L. Ed. 867]), and that it decided and adjudged correctly in determining the validity of the will. It also held that the Circuit Court erred in determining or assuming to determine the rights and interests of the parties domiciled in Pennsylvania (Chief Justice Fuller and Mr. Justice Shiras dissenting) as between themselves, and in ordering an accounting, which had already been had in the orphans' court (probate court) and had become final. The court also held that the estate or property could not be taken by the Circuit Court or its processes from the custody of the orphans' court, as that court had possession, but that the decree of the Circuit Court would be binding as to all nonresident parties.

The case of Graham v. Lybrand, 142 Fed. 109, 73 C. C. A. 333, is more pertinent to the question before this court. There Jacob W. Lybrand, the decedent and testator, was domiciled in Ohio, where he died, and where letters of administration were granted to one Graham. The property, all personal, of Lybrand, some $85,000, was sent or taken by certain of his relations to the state of Wisconsin shortly before his death, where his will was proved and letters issued to the executors, the persons who took the property to that state. There was no property in Ohio belonging to the deceased. Lybrand owed certain debts in Ohio, and judgments therefor were obtained in Ohio against

the administrator, to be collected, of course, from the estate. Graham, as administrator, brought suit in the Circuit Court of the Western District of Wisconsin against the executors, praying a decree that the executors turn over to him sufficient of the assets to pay the debts in Ohio, the domicile of the testator. The bill was demurred to, the demurrer sustained, and on appeal to the Circuit Court of Appeals this action was affirmed. There was a statute in Wisconsin which would have permitted the Ohio administrator to file his letters, etc., in Wisconsin, and collect the assets, etc., there, in case no administration had been granted in that state? The Circuit Court of Appeals said (142 Fed. 111, 112, 73 C. C. A. 335, 336):

"The Wisconsin statute would permit the plaintiff, if no administration was being had in Wisconsin, to file a duly authenticated copy of his appointment and to sue for the possession of property which had belonged to his decedent at the time of his death; but, if administration is going on in Wisconsin, the statute leaves the foreign administrator disqualified to come into the state and take independent action to gather in the assets. The fund is in charge of the Wisconsin state court. The federal court in Wisconsin would have the right to adjudicate against these defendants the amount of a claim against the estate; but it rightly declined to order the officers of the Wisconsin state court to turn over a fund under the control of that court to the officer of the Ohio state court for administration there. Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906, 37 L. Ed. 867. If the Ohio court desired a portion of the assets in Wisconsin, possibly a more fortunate outcome would have resulted from sending its ambassador with a proper petition to the court where the fund was; but, even so, the event would depend upon comity rather than right."

This suit now before this court is not brought by any legatee named in the will or codicil of Elizabeth S. Eaton to have their respective rights and interests in the estate ascertained and determined, or to recover any debt, legacy, or distributive share. The estate is not ready for distribution to the residuary legatees; but the income from time to time is ready to be paid to the one entitled thereto. If Susan C. Storms, now Higgins, should bring suit in this court to have it determined that she has an interest as legatee under the provisions of the will, disregarding the codicil, setting up the action of the respective courts in Michigan and New York, and praying a determination as to which is the will that governs, I think this court would have jurisdiction of the action. This court could not take the property from the custody of the Madison County Surrogate's Court by any process; but it could make a decree as to the rights of the parties. I do not find authority for the proposition that the administrator with the will annexed can maintain an action for such purpose. Should such suit be brought by the legatee, this court would be called on to determine her right, and in such case would be called upon to decide whether or not she is bound by the decree in the Madison County Surrogate's Court holding that the testatrix was of sound mind and memory when she executed the codicil; the legatee having entered upon a contest over that question when she personally appeared and made herself a party. Probate proceedings are not usually inter partes or res adjudicata as between nonresidents served by publication and the petitioner or petitioners. The court has jurisdiction by virtue of the location of the res within its jurisdiction. The nature of a proceeding to probate a

will is one in rem,.and not one inter partes. Farrell v. O'Brien, 199 U. S. 89, 106, 110–111, 25 Sup. Ct. 727, 50 L. Ed. 101. See, also, opinion in Overby v. Gordon, 177 U. S. 214, 222, 20 Sup. Ct. 603, 44 L. Ed. 741 et seq.; Robertson v. Pickrell, 109 U. S. 608, 3 Sup. Ct. 407, 27 L. Ed. 1049. However, under the New York statutes all persons cited and having an interest to defeat the will may appear and contest its validity and the competency of the testator to make it. Section 2617, Code Civ. Proc. And section 2626 makes the will of personal property conclusive, except as there stated. This question may affect Mrs. Kersey, also, as under the will, in a certain contingency, she takes the place of Mrs. Higgins to a certain extent. However, she, too, appeared and contested the validity of the codicil.

May this court, at the suit of the administrator with the will annexed appointed in Michigan, exercise .the judicial discretion of determining whether or not the property in New York, and in the possession of the executor appointed here, and consequently of the Surrogate's Court of Madison county, N. Y., shall be transmitted to such administrator, and consequently to the probate court of Michigan. If this court can do that, and enforce its decree, it can take the property from the custody of the one state court and transfer it to that of the other. This power is denied by the Supreme Court of the United States, as we have seen. Can this court substitute its judgment or discretion in the matter for that of the Surrogate's Court? Is not that a matter relating or pertaining solely to the administration of the estate? I find no statute expressly conferring such power on any court. However, the Supreme Court of the state of New York in certain cases has concurrent jurisdiction with that of the Surrogate's Court in the settlement of the estates of deceased persons, testate and intestate. If the Supreme Court of the state of New York may in its discretion assume jurisdiction of this estate, so far as situated here, and direct the transmission of the property, I think this court can exercise the same power at the suit of a nonresident of the state having the proper interest in the matter. See Schurmeier v. Connecticut M. L. I. Co., 137 Fed. 42, 44, 45, 69 C. C. A. 22, and cases cited; Security Trust Co. v. Black River Nat. Bank, 187 U. S. 211, 23 Sup. Ct. 52, 47 L. Ed. 147. In this last case it is held that the federal courts, in exercising jurisdiction at the suit of a nonresident against an executor, is but enforcing the law of the state, and is bound by the same rules that govern the local tribunals. But the Supreme Court of the state of New York will not assume or exercise jurisdiction over the settlement of the estates of executors or administrators, except in special cases, where it is necessary to "supplement insufficient authority in the Surrogate's Court to meet the conditions of the particular case, or where for some other reason full and complete justice cannot be done in that court." Borrowe v. Corbin et al., as Executors, 31 App. Div. 172, 52 N. Y. Supp. 741, affirmed on opinion below 165 N. Y. 634, 59 N. E. 1119; Matthews v. Studley et al., as Executors, 17 App. Div. 303, 45 N. Y. Supp. 201, affirmed on opinion below 161 N. Y. 633, 57 N. E. 1117. In this last case the court below said:

"Indeed, no proceeding for an accounting of executors, in the Supreme Court, will ever be permitted, unless special reasons are shown why such an account-

ing cannot, or ought not to, be taken in the Surrogate's Court. That court is the proper tribunal for such proceedings, and it is not necessary or proper to remove them into another court, in the absence of special reasons which require that course to be taken."

The surrogate of Madison county has full power and jurisdiction to hear and decide every question presented here. Therefore, following the law as declared by the highest court of the state of New York, this court ought not to take jurisdiction here. It is presumed that the Surrogate's Court of Madison county, N. Y., will follow the law and administer and distribute the estate according to the law of the testator's domicile. If it fails or refuses so to do, its errors will be corrected on appeal. There is no privity between an executor of the will of a deceased person appointed in one state, that of his residence, and an administrator with the will annexed of the estate of the same person appointed in another state, and a judgment against the one establishing a debt against the estate is not binding in the other. Brown v. Fletcher's Estate, 210 U. S. 82, 28 Sup. Ct. 702, 52 L. Ed. 966; Stacy v. Thrasher, 6 How. 44, 59, 60, 12 L. Ed. 337; Johnson v. Powers, 139 U. S. 156, 160, 11 Sup. Ct. 525, 35 L. Ed. 112; Ingersoll v. Coram, 211 U. S. 335, 362, 29 Sup. Ct. 92, 53 L. Ed. 208, et seq. But see Aspden v. Nixon, 4 How. 467, 11 L. Ed. 1059, and Carpenter v. Strange, 141 U. S. 87, 105, 11 Sup. Ct. 960, 35 L. Ed. 640. Estoppels must be mutual. What effect this may have in proper proceedings in the proper form it is unnecessary to decide. Clearly the decree in Madison county is not binding on the administrator in Michigan.

An answer was filed, but subsequently a demurrer was filed to the bill, with permission of this court, which takes its place. The issue is on the demurrer, and on an application for an injunction to restrain payments under the codicil pending the suit. My conclusions are that the administrator with the will annexed cannot maintain this suit as one to recover the legacy given by the will to Susan C. Storms, or Higgins, conceding that the decree of the probate court of Michigan must prevail; that it is not a suit by a nonresident plaintiff for a legacy or share; that this court cannot exercise the same power and jurisdiction in the premises possessed by the local court of Madison county in regard to the transmission of the estate to the jurisdiction of the domicile of the testator; that under the law of the state of New York, as declared by its highest court, the Supreme Court of the state, of general jurisdiction, has no power to grant the relief prayed for; and that, therefore, this court cannot. This view is sustained by the decision of Putnam, C. J., in Ingersoll v. Coram (C. C.) 132 Fed. 168, 172, where it is said:

"The line of demarcation thus pointed out is a clear one, recognizable on fundamental principles; but also, on the authority of numerous decisions of the Supreme Court, we would have no jurisdiction to interfere with the action of the probate court for the county of Suffolk, so far as restraining that court from remitting portions of the estate under its jurisdiction to the proper tribunal at the place of domicile for distribution by that tribunal. Possibly, if all the heirs and legatees interested in the estate were defendants in the present bill, and were retained therein as such parties, we might restrain them from applying to the probate court in Suffolk county for an order remitting the estate under its jurisdiction; but we doubt whether, even under those circumstances, we could proceed to that extent. It is for the probate court for

the county of Suffolk to determine whether it will order the estate to be directly distributed or to be remitted, and we cannot compel it to order distribution; so that the result of any attempt on our part to prevent it from remitting would justify the probate court in refusing all action, if it saw fit to take that course, thus indefinitely leaving the portions of the estate in this jurisdiction unavailable, and demonstrating the folly, as well as the illegality, of our interference."

The demurrer is sustained, the injunction vacated, and the motion to continue same denied.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.