tent, therefore, I am necessarily somewhat familiar with the want of power in the late board of statutory consolidation to report any substantial change in the pre-existing law. The statute from which section 47 was mediately taken was only a declaratory statute and in no wise affected the prior law. Mr. Throop's Note to section 2694, Code Civ. Proc. The law of this state now stands as if neither section 2694, C. C. P., nor section 47, Pers. Prop. Law, had ever been enacted. We cannot make rules of private international law in this state by acts of our own Legislature. Such an absurd attempt must not be imputed to a statute of this state.

In view of all the foregoing considerations, the surrogate now holds that the law of New York, including section 18 of the Personal Property Law, and not the law of Italy, governs the construction of the will of Madame (the Baroness) Alice Franchetti in so far as the will is concerned with the settled property of her father, the late Mr. Hallgarten, and that therefore the Italian law in respect of the execution of testamentary powers is quite inconsequential in this particular. But farther than this the surrogate does not hold. He does not wish to be taken as holding that as to Madame Franchetti's private property (or that outside of the trust settlement created by the will of her late father) the law of her domicile is not prevalent in a proper case.

Motion granted.

---

(79 Misc. Rep. 200.)

### In re HOLLINS et al.

#### (Surrogate's Court, New York County. January 27, 1913.)

1. DESCENT AND DISTRIBUTION (§ 5*)—WHAT LAW GOVERNS.
   The disposition of the personalty of an English woman is primarily governed by the laws of England, including the laws taxing bequests.
   [Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 19–22; Dec. Dig. § 5.*]

2. COURTS (§ 512*)—INHERITANCE TAX—FOREIGN INHERITANCE TAX.
   This state should recognize the right of a foreign state or nation to impose a succession tax upon personalty belonging to its subjects whereever situate; New York imposing a similar tax.
   [Ed. Note.—For other cases, see Courts, Cent. Dig. § 1432; Dec. Dig. § 512.*]

3. EXECUTORS AND ADMINISTRATORS (§ 518*)—PLACE OF ADMINISTRATION.
   Though executors were appointed in this country where an English subject had securities, and the will was proved here de novo, England remained the principal place of administration; it not being permissible to have two principal places of administration.
   [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2299–2309; Dec. Dig. § 518.*]

4. EXECUTORS AND ADMINISTRATORS (§ 523*)—DEDUCTION OF SUCCESSION TAX.
   The American executors of an English subject leaving personalty in this country from which bequests were made properly deducted the succession tax required by the laws of England before paying over such bequests; England being the principal place of administration.
   [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 2329; Dec. Dig. § 523.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. Courts (§ 98*)—What Law Governs.

The surrogate, in construing the duties of American executors of an English subject in distributing the estate in this country, should recognize the decision of the English courts that property sent to Great Britain by the American executors may be there appropriated for any unpaid legacy due.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 324; Dec. Dig. § 98.*]

6. Courts (§ 512*)—Succession Tax—Foreign Laws.

The courts of this state will not ordinarily aid a foreign country in the enforcement of its revenue laws.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1432; Dec. Dig. § 512.*]

In the matter of the judicial settlement of the account and supplemental accounts of Harry B. Hollins and others, as executors of Consuelo, Dowager Duchess of Manchester. On hearing of objections to the supplemental accounts. Objections overruled, and decree entered as stated.

Strong & Cadwalader, of New York City (Henry W. Taft and Francis Smyth, both of New York City, of counsel), for the American executors.

Edmund L. Baylies and Edwin D. Bechtel, both of New York City, for the Countess Zichy.

Rush Taggart, of New York City, for the Duke and Duchess of Manchester.

Russell S. Wolfe, of New York City, for trustees H. B. Hollins et al.

Lawrence Millet, of New York City, for Elizabeth Reynolds.

Egerton L. Winthrop, Jr., of New York City, special guardian for Lord Manchester et al.

A. Perry Osborn, of New York City, special guardian for Ernesto Yznaga et al.

FOWLER, S. The Dowager Duchess of Manchester at the time of her death was a British subject, domiciled in England, where her last will and a codicil thereto were duly probated on the 17th of December, 1909. Subsequently the same testamentary instruments were proved de novo in this jurisdiction before a surrogate for this county, and letters testamentary were thereupon granted by this court to the gentlemen called the "American executors" of the late Dowager Duchess of Manchester. It appears that the testamentary instruments aforesaid designate executors for the English estate, and separate executors, domiciled here, for the American estates. It is the accounts of the "American executors,'" so called, which are now filed for settlement in this court. The Countess Zichy, a legatee under the will, objects to that part of the proposed decree which in substance provides that the American executors and trustees shall deduct from the annuity coming to her under the said will a certain amount in satisfaction of the legacy duty payable thereon under the laws of England to the crown. A sum sufficient to pay such legacy duty has been remitted by the American executors to the English executors. The

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Countess Zichy is now nationally an Austrian subject, domiciled in Austria, and in her behalf it is claimed in substance that the American executors should have ignored the laws of England and are bound to pay over to the Countess Zichy, free of the English duty or tax, the annuity given to her by the will of the late Dowager Duchess of Manchester. The only question before the surrogate is whether or not the American executors were justified for the purpose of this accounting in remitting to the English executors a sum sufficient to discharge the legacy duty imposed by the laws of England on the annuity to the Countess Zichy.

[1] As the Dowager Duchess of Manchester had become an English woman and was domiciled in England at the time of her death, the devolution and disposition of her movable estate, or, in other words, her personal property, are primarily governed by the law of her English domicile. Parsons v. Lyman, 20 N. Y. 103. The law of England provides for a legacy duty upon every bequest of personal property contained in the will of the late Dowager Duchess. The annuity to the Countess Zichy was clearly, in the abstract, subject to the payment of such legacy duty.

[2] As our own tax law imposes a similar succession tax or duty upon the personal property of a resident of this state, wherever such property may be situated (Matter of Estate of Swift, 137 N. Y. 77, 32 N. E. 1096, 18 L. R. A. 709), we ought not in this matter to question the right of a foreign state to impose a succession tax upon personal property, wherever situated, belonging to its subject domiciled in such foreign state.

[3] Although the will of the late Dowager Duchess of Manchester was proved here de novo, nevertheless England is, in this instance, the principal place of administration. The administration here, whether so termed or not, is to some extent necessarily an ancillary administration only. There cannot be two principal places of administration in respect of the estate of this deceased English lady. Despard v. Churchill, 53 N. Y. 192; Matter of Accounting of Hughes, 95 N. Y. 55. The possession of the American executors is to be regarded in this instance, there being no claims of American creditors interposed, to some proper extent as a possession of an English estate. The mere fact that the Dowager Duchess named executors domiciled in the various countries where her estate or her securities were situated does not make her foreign executors any the less her executors. If not strictly her executors, they are, in any event what in some systems is termed, her "posthumous agents." For some purposes executors and a testator are eadem persona in legal contemplation. Otherwise such executors are "posthumous agents," and, where no local impediment exists, their obligations are not different from the paramount and legal obligations of the deceased whom they represent. It may be assumed, I think, that the Dowager Duchess of Manchester contemplated that her posthumous agents or executors, wherever they might be, would in respect of her estate comply with the law of her domicile in so far as possible, unless the lex fori prohibits such compliance.

[4] This it does not, in this instance, do, as there is no pretense that

her estate is not entirely solvent. It does seem to me, there having been no local interposition, that the American executors of the late Duchess did precisely what they should have done when they remitted, ex debito justitiæ, the money to discharge the duties due by her estate to the government of England, that being the government to which their testatrix owed her primary allegiance in later life and at the time of her death. I should be sorry to think that this was not our law on this matter. I believe that the spirit of the adjudications already cited by me, if largely interpreted, bears me out in this conclusion. But there are other considerations to which I shall proceed.

It is generally true that the courts of this state will not go out of their way to aid a foreign state in the enforcement of its peculiar revenue laws. It is contended on behalf of the Countess Zichy that while England may impose a tax upon her annuity or legacy, the English authorities cannot collect it, as the property out of which the annuity is payable is not actually in England, and the Countess herself is not within English jurisdiction. Apparently Countess Zichy would like to have her annuity regarded here as one given by an American lady to another American lady out of American property. But both ladies have long ceased to be Americans, and by figure of speech only is the property here American. The contention of Countess Zichy is only literally true in any aspect. When the Countess Zichy became the recipient of a legacy given by the will of an English woman and payable out of an English estate, wherever situated, the legacy itself, to my mind, was burdened with certain implied conditions which bind the legatee whether in or out of English jurisdiction. In other words, the legatee must be taken to receive such legacy subject to any burdens which the sovereign of the donor lawfully imposes on the gifts of its subjects. This fact the American testamentary executors of the Dowager Duchess have a right to recognize provided the claims of local creditors are not paramount. This is not pretended to be the case here. When the aid of this court is invoked by foreigners, as is virtually the case here (the local executors having no independent legal existence apart from their testatrix), the court should not be expected to ignore plain principles of justice. The entire content of private international law depends on natural justice and equity.

It is strenuously contended in behalf of the Countess Zichy that a legacy duty under the English law is payable only out of the particular legacy on which it is imposed, and that the English executors are liable for payment of the duty on her legacy only in the event that property shall come into their hands applicable to the discharge or payment of the particular legacy to the Countess Zichy. As the property on which the annuity to the Countess Zichy is charged, or out of which it is payable, has not come directly into the hands or possession of the English executors, and will not in the course of the administration of the estate of the late Dowager Duchess be received by the English executors, it is contended that the duty on the legacy to Countess Zichy, although payable under English law, should not be deducted by the American executors or by them paid or transmitted to the English executors of the late Dowager Duchess. I do not quite see how the

American executors can be expected to ignore the state of the law of the country of their testatrix, unless compelled so to do by the lex fori.

From the papers submitted to the surrogate on the hearing, it would appear that Mr. Justice Swenfin Eady, a judge of the English "High Court of Justice,'" has decided, or authoritatively intimated in substance, that any property sent by the American executors or trustees to Great Britain for any purpose may be intercepted and appropriated by the crown in satisfaction of any unpaid legacy duty on legacies given by the late Dowager Duchess to her foreign legatees. It is not for this court to reconcile the decision of this English judge with the decisions cited by the learned counsel for the Countess Zichy.

[5] It is sufficient here that the decision in question was rendered by a foreign court of competent jurisdiction. The decision or intimation should be recognized by the surrogate in his consideration of the duty and liability of the American executors of the late Dowager Duchess. As the English courts will, I have no doubt, enforce payment of the legacy duty upon the legacy to the Countess Zichy from any property of the estate of the late Duchess located in England or forwarded to England by the American executors or trustees for the purpose of being applied to the payment of other legacies, the other legatees will in that event be compelled to pay the duty properly payable by the Countess Zichy, but unenforceable against her because of a lack of jurisdiction over her by the English court. This would result in an injustice which the courts of this country should not sanction.

[6] While it is doubtless true that this court will not aid a foreign country in the enforcement of its revenue laws, it will not refuse to direct a just and equitable administration of that part of an estate within its jurisdiction merely because such direction would result in the enforcement of such revenue. laws. The court should favor such an administration of the estate here as will be in conformity with the intention of the testatrix. It certainly was not the intention of the late Duchess that the bequests made by her to the English legatees should be partly confiscated in the payment of death duties imposed upon the bequests to foreign legatees. The orderly and equitable administration of the estate seems in this instance to require that the legacy duty imposed by English law upon the annuity given to the Countess Zichy by the will of the late Dowager Duchess of Manchester should be paid out of the property set apart by the executors in this country for the production of such annuity.

The objection should be overruled, and the decree submitted by the accountants signed.