## In the Matter of the Estate of ANITA BLISS, Deceased.

Surrogate's Court, New York County, December, 1923.

**Transfer tax — a sister state cannot employ the courts of this state to enforce the collection of its taxes — taxes due a sister state do not make it a creditor of a decedent's estate — when assets of estate within this state will not be transferred to state of domicile.**

The collection in this state of inheritance taxes due to a sister state is precluded upon broad principles of public policy and of constitutional law.

While the state of domicile may tax the transfer of property as against non-resident beneficiaries or may tax the transfer, with certain exceptions, in a foreign state, it must obtain payment of the tax out of property within its own boundaries.

Two independent probate proceedings having been conducted, one in Vermont, the state of decedent's domicile, the other in New York, where the largest part of his estate was located at the time of his death, the state of Vermont, through its commissioner of taxes, upon interposing objections to an intermediate accounting of the executors, asked that after the payment of the expenses of administration, taxes due the state of New York, and debts due New York creditors, the assets be transferred to the executors appointed by the Probate

Court in Vermont for final distribution, or in the alternative that no distribution be decreed until payment of all taxes due the state of Vermont. Upon motion to dismiss the objections it appeared that in proceedings duly had in the state of New York, the transfer tax assessed as against a non-resident estate has been paid; that the value of property in this jurisdiction was $900,000 out of a total of $1,000,000; that none of the legatees resides in Vermont and that there is now undistributed real property therein greatly in excess of the amount claimed by that state to be due for transfer taxes. *Held*, that the claim of the objector that there were taxes due to the state of Vermont did not make it a creditor of the decedent's estate and that the objector had no status as a party interested in the estate here, but aside from this conclusion, the surrogate having complete jurisdiction will not in the exercise of discretion direct the transmission of the assets within New York to the state of decedent's domicile.

PROCEEDING to settle intermediate account of executors.

*Frederick Trevor Hill*, for accounting executors.

*Clark, Carr & Ellis (William D. Ahearn*, of counsel), for State of Vermont.

*John H. Judge*, for Little Mothers Aid Association.

*Franklin D. Peale*, special guardian.

FOLEY, S. This is a motion by the executors to dismiss the objections to their intermediate account interposed by the state of Vermont through its commissioner of taxes. Two independent probate proceedings have been conducted, one in Vermont, the state of conceded domicile, the other in New York, where the largest part of the estate was located at the time of death. I am of the opinion that the motion must be granted.

The objections set forth that by the laws of Vermont a collateral inheritance tax is imposed on certain beneficiaries receiving a legacy in the estate of a resident of that state; that the legacies provided in the will of decedent, in so far as they consist of real estate situated in Vermont or personalty wherever situated, are subject to the tax and that proceedings are pending in Vermont to determine the amount of the tax due; that the estimated amount of such taxes is $50,000; that the value of the real estate within the state of Vermont is approximately $100,000, but there may be a question on as to whether it could be subjected to a lien for more than five per cent of its value. The objector asks that after the payment of administration expenses, taxes due the state of New York, and debts due New York creditors, the assets be transferred to the executors appointed by the Probate Court of the Probate District of Manchester for final distribution, or in the alternative, no distribution be decreed until all taxes due the state of Vermont have been paid.

In their application to dismiss the objections, the executors

MATTER OF ANITA BLISS.     775

Misc. 773]     Surrogate's Court, New York County, December, 1923.

show that the decedent died in the county of New York leaving property therein; that letters testamentary were issued out of this court to the executors; that transfer tax proceedings were had in this state, and the tax assessed as against a non-resident estate and paid; that the value of the property in the county of New York is $900,000 out of a total of $1,000,000; that none of the legatees reside in Vermont and that there is now in Vermont undistributed real estate greatly in excess of the amount claimed by that state to be due for transfer taxes. It further appears that the commissioner of taxes had applied to the Probate Court of the state of Vermont to compel the executors to file a bond in the sum of $50,000 to insure the payment of any taxes ultimately found to be due, and that such bond has been given by the executors.

There are two reasons for the dismissal of the objections: (1) The broad principle of public policy and constitutional law, which precludes the collection in this state of inheritance taxes due another state; (2) the refusal of this court, in its discretion under the special circumstances of this estate, to transmit the assets to Vermont.

The contention that the Vermont inheritance tax is a claim against the estate, which should be enforced by our laws, finds a complete answer in the decision of the Court of Appeals in the case of *State of Colorado* v. *Harbeck*, 232 N. Y. 71. The facts in that case are parallel with those here. In each estate there was an independent probate of the will in New York. In the *Harbeck* case the decedent was a resident of Colorado. Most of the property of the estate was within our jurisdiction. Colorado attempted by a common-law action in our Supreme Court to recover its taxes against the executors and beneficiaries of the estate. The trial court dismissed the complaint. The Court of Appeals held that the action was properly dismissed, and that a transfer tax could not be collected from persons not within the jurisdiction of the foreign state, or out of the property located outside of its territorial limits. It was urged that the statute of Colorado authorized the attorney-general of that state to enforce liability by action. In his opinion Judge Pound said: " The attempt to give such a statutory provision extraterritorial effect would conflict with another well-settled principle of private international law which precludes one state from acting as a collector of taxes for a sister state and from enforcing its penal or revenue laws as such. The rule is universally recognized that the revenue laws of one state have no force in another. The remedy is a part of the law and we are once more brought to face the doctrine that the taxing power of the state is by the federal Constitution limited to persons and property within its jurisdiction. (*Wisconsin* v. *Pelican Ins. Co.*, 127 U. S. 265;

*Marshall* v. *Sherman*, 148 N. Y. 9, 24–26; *Loucks* v. *Standard Oil Co.*, 224 .N. Y. 99, 102; *Walker* v. *Treasurer, etc.*, 221 Mass. 600; *City of New York* v. *McLean*, 170 N. Y. 374.)"

The state of domicile may tax the transfer as against non-resident beneficiaries, or it may tax the transfer of property (with certain exceptions) in a foreign state (*Matter of Keeney*, 194 N. Y. 281, 287, affd., 222 U. S. 525), but it must obtain payment of the tax out of the property within its boundaries. I can perceive no distinction between an attempt to enforce remedies by action in the Supreme Court, and an effort to intervene in a proceeding in the Surrogate's Court. The relief sought is the same in each case. Vermont cannot employ our courts as agencies to enforce the collection of its taxes. See, also, *People* v. *Kellogg*, 268 Ill. 489; *Walker* v. *Treasurer*, 221 Mass. 600; *State of Iowa* v. *Slimmer*, 248 U. S. 115. The claim that taxes are due does not make the state of Vermont a creditor of the decedent's estate. Transfer taxes are not debts. *State of Colorado* v. *Harbeck, supra; City of Rochester* v. *Bloss*, 185 N. Y. 42, 47; *City of New York* v. *McLean, supra*. Circumstances may occur where intervention by a foreign state will be permitted as indicated in *Tilt* v. *Kelsey*, 207 U. S. 43; *Matter of Lawrence*, N. Y. L. J. Feb. 15, 1913. But the objector here has no status as a party interested in this estate.

Aside from this conclusion, however, the surrogate will not, in the exercise of his discretion, direct the transmissal of the assets of the estate within New York to the state of domicile. The administration here is not ancillary, but original. Complete jurisdiction to probate the will and to direct distribution is vested in our courts. *State of Iowa* v. *Slimmer, supra; Matter of Hughes*, 95 N. Y. 55; Decedent Estate Law, § 23; Surrogate's Court Act, §§ 45, 255, 261.

Confronted by the *Harbeck* decision, Vermont seeks to escape its effect by compelling the remission to that state of the assets within our state. Its sole purpose is to bring within its territorial jurisdiction the property now within New York in order to subject its transfer to a collateral inheritance tax. The transmissal of assets to the domiciliary state from the foreign state of administration is a matter of judicial discretion depending upon the circumstances of the particular case. *Matter of Hughes, supra; Despard* v. *Churchill*, 53 N. Y. 192, 199. The remission of the property should not, however, be decreed unless the rights of creditors or beneficiaries will be served. In *Matter of Hughes, supra*, the surrogate decreed that the property of the decedent, a resident of Pennsylvania, should be remitted to the administrator in that state for distribution, and his determination was upheld

Misc. 773]    Surrogate's Court, New York County, December, 1923.

by the General Term. The Court of Appeals, however, while holding the matter was in the discretion of the surrogate, reversed his decision and that of the General Term when it was made to appear that all the next of kin were in our state, that there were no creditors in Pennsylvania and that the result of granting the application would be to incur unnecessary expense to the distributees. In *Despard* v. *Churchill, supra,* the court, in order to carry out the intent of the testator, decreed that the assets within this state be remitted to the state of California, of which decedent was a resident, because certain provisions in the will, invalid under our law, were valid in California.

What I am asked to do is to quiet all question of the power of Vermont to levy a tax by giving it jurisdiction of the property. If the New York assets remain here it is doubtful whether the tax could be lawfully collected. If they could be brought within the taxing jurisdiction of Vermont and actually within her state limits, the tax must be levied under her law. The far-reaching consequence of the approval of such action must be apparent even to those unfamiliar with the intricacies of transfer tax litigation. Such procedure far exceeds any question of comity and would create a system whereby each state would become the busy collection agent of another state in gathering its taxes. The property might be directed to be transferred from state to state and depleted to the vanishing point by successive taxation. No good reason exists so far as the administration of this estate is concerned for the transfer of the assets to Vermont. The executors do not reside in that state; none of the legatees or beneficiaries demand that the assets be transferred; they acquiesce in the contention of the executors that they remain here. No question of marshalling of assets or debts exists. Vermont appears to be now amply secured for any tax due. One of the legatees, the Little Mothers Aid Association, a New York charitable corporation, is entitled under the will to a legacy of $350,000 for the erection of a home. The granting of the relief sought by the tax commissioner of Vermont will prejudice a charitable corporation, which should be the special object of protection by our courts, for the provisions of the will require prompt compliance by this legatee with certain conditions, particularly the completion of the home within five years after testatrix's death. If the funds required to pay this legacy be administered through the Vermont Probate Court, delay will result in payment and possible forfeiture of the legacy may take place.

It also appears that double commissions may be awarded to the executors if the assets be transferred. All these facts justify a denial of the exercise of the discretion of the surrogate.

**778** CHRISTOPHERSEN & KIAER, INC., v. U. S. NAV. CO., INC.

Municipal Court of New York, December, 1923.    [Vol. 121

*Matter of Hollins,* 79 Misc. Rep. 200; affd., without opinion, 160 App. Div. 806, cited by counsel for the state of Vermont, is clearly distinguishable from the instant case.    There it was held by Surrogate Fowler that the executors of the estate in this state, of a decedent domiciled in England, might deduct from a legacy payable out of the American estate a proportionate share of the succession tax imposed on the entire estate in England.    The learned surrogate in writing the opinion said: " It is generally true that the courts of this state will not go out of their way to aid a foreign state in the enforcement of its peculiar revenue laws."    *Matter of Hollins, supra.* The dispute was between the executors and a legatee who attempted to escape a tax levied on her interest in England.    The surrogate directed payment of the tax to prevent inequality and injustice among the various beneficiaries.    In this case and in other cases cited by the counsel for the Vermont tax commissioner, the contest was between the executor and the beneficiaries of the estate, and not directly between the estate and the taxing officials of the foreign state.

Submit order on notice accordingly.

Decreed accordingly.